1  ROSEMARY M. RIVAS (SBN 209147)
   Email: rrivas@finkelsteinthompson.com
2  **FINKELSTEIN THOMPSON LLP**
   505 Montgomery Street, Suite 300
3  San Francisco, California 94111
   Telephone: (415) 398-8700
4  Facsimile: (415) 398-8704

5

   *Attorneys for Plaintiff Richard B. Levin*
6

7

8              UNITED STATES DISTRICT COURT

9         FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11 RICHARD B. LEVIN, on behalf of        CASE NO: CV 13-09314-PSG
   himself and all other persons similarly        (MRWx)
12 situated,
                                         **CLASS ACTION COMPLAINT**
13            Plaintiff,                  **FOR DAMAGES, EQUITABLE,**
                                          **DECLARATORY AND**
14       v.                               **INJUNCTIVE RELIEF**

15 THE HAIN CELESTIAL GROUP, INC.,

16            Defendant.                  **JURY TRIAL DEMANDED**

17

18

19

20

21

22

23

24

25

26

27

28

                    CLASS ACTION COMPLAINT

1   Plaintiff Richard B. Levin ("Plaintiff"), by his attorneys, alleges upon
2   personal knowledge as to his own acts, and as to all other matters upon
3   information and belief based upon, *inter alia,* the investigation made by and
4   through his attorneys.

**INTRODUCTION**

5

6   1.   Plaintiff brings this consumer class action on behalf of himself and
7   those who purchased certain of The Hain Celestial Group, Inc.'s ("Defendant,"
8   "Hain," or the "Company") tea products which are marketed and advertised as
9   "100% Natural" (hereinafter the "Class").

10   2.   Plaintiff and the Class have been harmed by Hain's mislabeling
11   and improper marketing of a number of its tea products (the "Subject Teas").[1]
12   In particular, and as alleged in greater detail below, Hain makes certain claims
13   on the packaging of its Celestial Seasonings products, as well as throughout its
14   websites, that the Subject Teas are "100% Natural." However, nothing could be
15   farther from the truth.

16   3.   As evidenced by a third party testing facility, Eurofins,[2] the
17   Subject Teas contained numerous contaminants at levels in excess of U.S.
18   pesticide standards. *See, e.g.,* 40 C.F.R. § 180 - Tolerances and Exemptions for
19   Pesticide Chemical Residues in Food. For example, as noted in a Glaucus

20

21   [1]  The "Subject Teas" include Celestial Seasonings Sleepytime Herbal Tea, Sleepytime Kids Goodnight Grape Herbal Tea, Peach Blossom Green Tea, Rasberry Gardens Green Tea, Authentic Green Tea, Antioxidant Max Green Tea Dragon Fruit Melon, Honey Lemon Ginseng Green Tea, Antioxidant Max Green Tea Blackberry Pomegranate, Antioxidant Max Green Tea Blood Orange Star Fruit, and English Breakfast Black Tea K-Cup.

22

23

24   [2]  According to Eurofins' website, "[w]ith over EUR 1 billion in annual revenues and 15,000 employees across 190 sites in 37 countries, Eurofins Scientific is a leading international group of laboratories providing a unique range of analytical testing services to the pharmaceutical, food, environmental and consumer products industries and to governments." *See* http://www.eurofins.com/en/about-us.aspx.

25

26

27

28

**CLASS ACTION COMPLAINT**

1  Research Group report (the "Report") released in February 2013 - which
2  attaches Eurofins' testing results regarding the Subject Teas - the following
3  chemicals were found in 10 out of 11 (91%) teas tested: Buprofezin,
4  Carbendazim, Chlorpyrifos (-ethyl), Chlorfenapyr, Cyhalothrin lambda,
5  Cypermethrin, p,p'-ddt, Diazinon, Dimethachlor, Dimethoate, Endosulfan
6  (Sum), Fludioxonil, Fipronil, Hexaflumuron, Imidacloprid, Malathion,
7  Profenofos, Permethrin, Pyridaben, Propachlor, Propargite, Thiamethoxam,
8  Thiacloprid and Triazophos. *See, e.g., Exhibit 1* attached hereto.

9      4.    Moreover, three of these insecticides, p,p'-ddt, Propachlor, and
10  Propargite are on California's Proposition 65 list of "Chemicals Known to the
11  State    to    Cause    Cancer    or    Reproductive    Toxicity."    *See*
12  http://oehha.ca.gov/prop65/prop65_list/Newlist.html.   In addition, safe harbor
13  limits do not exist under Proposition 65 for Propachlor (found in Sleepy Time
14  Kids Goodnight Grape Tea) and Propargite (found in six other samples of the
15  Subject Teas).

16      5.    On behalf of himself individually and on behalf of all others
17  similarly situated, Plaintiff alleges statutory violations of the Unfair
18  Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL" or "Section
19  17200"), the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*
20  (the "FAL" or "Section 17500"), the Consumers Legal Remedies Act, Cal. Civ.
21  Code §§ 1750, *et seq.* (the "CLRA"), and common law claims for breach of
22  express warranty, breach of contract, intentional misrepresentation, negligent
23  misrepresentation, and unjust enrichment.

24                    **JURISDICTION AND VENUE**

25      6.    This Court has subject matter jurisdiction over this action pursuant
26  to 28 U.S.C. § 1332(d)(2), because the matter in controversy, upon information
27  and belief, exceeds $5,000,000, exclusive of interests and costs, and this matter

28
**CLASS ACTION COMPLAINT**

1  is a class action in which Class members are citizens of a different state than

2  that of Defendant.   As such, the amount in controversy exceeds the

3  jurisdictional minimum of this Court.

4        7.     Further, this Court has jurisdiction over Hain because Defendant

5  does sufficient business in California, has sufficient minimum contacts with

6  California or otherwise intentionally avails itself of the markets within

7  California through sales and marketing to render the exercise of jurisdiction by

8  this Court permissible under traditional notions of fair play and substantial

9  justice.

10        8.     Venue is also proper in this Court pursuant to 28 U.S.C. § 1391,

11  because Defendant's acts occurred in this Judicial District.   Moreover, the

12  misconduct at issue had effects in this County.   Venue is also proper in this

13  County because Plaintiff purchased products at issue in this County, and

14  Defendant conducts business within this County.

15  **THE PARTIES**

16        9.     Plaintiff Richard B. Levin purchased certain of the Subject Teas

17  and was damaged by Defendant's mislabeling and improper marketing of the

18  Subject Teas as "100% Natural" as alleged herein.   Plaintiff is currently a

19  citizen and resident of Ventura County, California and, during the last three

20  years, has purchased Sleepytime Herbal Tea on repeated occasions for personal

21  consumer use in Los Angeles, Santa Barbara and Camarillo, California at

22  Ralphs and Vons grocery stores.  Plaintiff read the label for these tea products,

23  which indicated that they were "100% Natural," and purchased these products

24  in reliance on that claim.   The "100% Natural" representation on the product

25  packaging was a material and substantial factor which influenced his decision to

26  purchase this tea.   He would not have purchased these tea products had he

27

28                      4

1  known that they are not, in fact, "100% Natural."  As such, Plaintiff suffered

2  injury in fact and lost money as a result of Defendant's practices.

3      10.    Defendant Hain is incorporated in Delaware and maintains its

4  principal executive offices at 1111 Marcus Avenue, Lake Success, New York

5  11042.  According to the Company's website, Hain "is a leading natural and

6  organic food and personal care products company in North America and

7  Europe…which participates in almost all *natural* food categories with well-

8  known brands that include Celestial Seasonings®[.]"[3]  According to Defendant,

9  it "has been providing *'A Healthy Way of Life™'* since 1993."  *See* www.hain-

10  celestial.com.  Defendant is a public company with a market capitalization of

11  over $4 billion and trades on NASDAQ under the ticker symbol "HAIN."  The

12  Company's operations are organized into geographic segments which include

13  the United States, United Kingdom and the Rest of the World (which is

14  comprised of Canada and Continental Europe).  Celestial Seasonings is the

15  division through which Hain markets and sells the Subject Teas.  On its

16  products and throughout its websites, Hain prominently states that its Celestial

17  Seasonings teas are "100% Natural."

18              **CLASS ACTION ALLEGATIONS**

19      11.    Plaintiff brings this lawsuit, both individually and as a class action

20  on behalf of similarly situated customers of Hain, pursuant to *Federal Rules of*

21  *Civil Procedure* 23(a) and (b).  The proposed Class is initially defined as:

22      All individuals who purchased one or more of the Subject Teas.
        Excluded from the proposed Class is Defendant, its respective
23      officers, directors, and employees, and any entity that has a
        controlling interest in Defendant.  Plaintiff reserves the right to
24      amend the Class definition as necessary.

25

26  _____

    [3] At all times, emphasis is added unless otherwise indicated.
27

12. **Numerosity**: Upon information and belief, the Class comprises at least thousands of consumers and is so numerous that joinder of all members of the Class is impracticable. While the exact number of Class members is presently unknown and can only be ascertained through discovery, Plaintiff reasonably believes that there may be tens of thousands of Class members.

13. **Common Questions of Law and Fact Predominate**: There are questions of law and fact common to the Class, which predominate over any individual issues, including, but not limited to:

(A)   Whether Defendant engaged in the conduct alleged herein;

(B)   Whether Defendant's practices were deceptive, unfair, improper and/or misleading;

(C)   Whether Defendant made intentional misrepresentations;

(D)   Whether Defendant made negligent misrepresentations;

(E)   Whether Defendant's conduct as alleged herein constitutes and resulted in breach of contract;

(F)   Whether Defendant's conduct as alleged herein constitutes and resulted in unjust enrichment;

(G)   Whether Defendant's conduct as alleged herein violated the UCL, Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

(H)   Whether Defendant's conduct as alleged herein violated the FAL, Cal. Bus. & Prof. Code §§17500, *et seq.*;

(I)   Whether Defendant's conduct as alleged herein violated the CLRA, Cal. Civ. Code § 1750, *et seq.*;

(J)   Whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss; and

(K)   Whether Plaintiff and Class members are entitled to declaratory and injunctive relief.

**CLASS ACTION COMPLAINT**

14.     **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class.   Plaintiff and all members of the Class have been similarly affected by Defendant's common course of conduct since they all relied on Defendant's representations concerning their products and purchased the products based on those representations.

15.     **Adequacy of Representation**: Plaintiff will fairly and adequately represent and protect the interest of the Class.   Plaintiff has retained counsel with substantial experience in handling complex class action litigation.   Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so.

16.     **Superiority of the Class Action**:  A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by each Class member resulting from Defendant's wrongful conduct are too small to warrant the expense of individual suits.  The likelihood of individual Class members prosecuting their own separate claims is remote, and even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class

7
**CLASS ACTION COMPLAINT**

1    action.  In addition, Defendant has acted or refused to act on grounds generally
2    applicable to the Class and, as such, final injunctive relief or corresponding
3    declaratory relief with regard to the members of the Class as a whole is
4    appropriate.

5        17.    Unless a class is certified, Defendant will retain monies it took
6    from Plaintiff and the proposed Class by means of its unlawful conduct.  Unless
7    an injunction is issued, Defendant will continue to commit the alleged
8    violations, and the members of the Class and the general public will continue to
9    be misled.

10                           **FACTUAL ALLEGATIONS**

11       18.    The "all natural" and "organic" marketplace is a multi-billion
12   dollar industry.  Moreover, well aware that consumers in recent years are trying
13   to lead a healthier lifestyle, companies like Hain aggressively tap into these
14   market segments by advertising and marketing their products as "Natural," "All
15   Natural," and "100% Natural" so they can maximize profits.

16       19.    For example, on the home page of Hain's website it states that the
17   Company "is a leading *natural* and organic food and personal care products
18   company in North America and Europe.  Hain Celestial participates in almost
19   all *natural* food categories with well-known brands that include Celestial
20   Seasonings®[.]"  *See* http://www.hain-celestial.com/index.php.

21       20.    On its investor relations page, under Hain's Company Profile, it
22   reiterates the representations above and goes on to state that "Hain Celestial has
23   been providing *'A Healthy Way of Life*™*'* since 1993."  *See* http://ir.hain-
24   celestial.com/phoenix.zhtml?c=87078&p=irol-irhome.

25       21.    On the "Brands" page of Hain's website it notes the following
26   regarding Celestial Seasonings:

27

28                                  8

> Founded in 1970, Celestial Seasonings is the leading brand of *natural* and specialty teas in North America. Consumers love Celestial Seasonings herb, wellness, green, black, organic and white teas for their delicious *all-natural* taste and creative packaging. For more information, visit the Celestial Seasonings web site at www.celestialseasonings.com.

*See* http://www.hain-celestial.com/brands.php.

22.     The Company continues with its "All Natural" and "100% Natural" representations on the Celestial Seasonings website which begins by stating the following on the "About Us" page:

> In 1969, a group of passionate young entrepreneurs founded Celestial Seasonings upon the belief that their flavorful, *all-natural* herbal teas could help people live healthier lives. They harvested fresh herbs from the Rocky Mountains by hand, and then dried, blended and packaged them in hand-sewn muslin bags to be sold at local health food stores. By staying committed to their vision, the founders of Celestial Seasonings turned their cottage industry into an almost overnight success. Today, Celestial Seasonings is one of the largest specialty tea manufacturers in North America. We serve more than 1.6 billion cups of tea every year, and we source more than 100 different ingredients from over 35 countries to create our delicious, *all-natural* herbal, green, red, white, chai and wellness teas. But most importantly, we're still about people and passion.

*See* http://www.celestialseasonings.com/about.

23.     Hain continues to state, on Celestial Seasonings "About our Tea" page that:

> For more than 40 years, we've traveled to the ends of the earth to find the highest quality, most authentic ingredients for our teas – visiting over 35 different countries to source more than 100 of the finest *natural* botanicals. Our extensive travels have enabled us to introduce the most unique and inventive flavor combinations available, and to bring a sense of adventure to every cup.

*See* http://www.celestialseasonings.com/our-tea.

24.     On Celestial Seasonings "Our Values" page, the Company continues to note the following regarding the quality and safety of its tea products:

9

> For more than 40 years, we've made ***all-natural*** teas that are good for our people and good for our planet. The philosophy of doing business in ways that are both people-friendly and planet-friendly is known as corporate social responsibility, and it is at the very core of the Celestial Seasonings story. We've always made doing business the right way a priority – from our humble beginnings in a Boulder barn to today serving more than 1.6 billion cups of tea per year.
>
> We are confident that all Celestial Seasonings Teas deliver on the ***high quality, safety*** and taste that consumers have expected from the brand for over 40 years. Celestial Seasonings employs a rigorous testing protocol to ensure all products adhere to strict industry standards. Celestial follows regulations set by the Food and Drug Administration (FDA) and Environmental Protection Agency (EPA). In addition, when a standard has not been established, Celestial utilizes standards set by United States Pharmacopial Convention (USP), the European Union Pharmacopial Convention (EU), and CODEX Alimentarius International Food Standards (established by the World Health Organization and the Food and Agriculture Organization of the United Nations). Our testing methodology covers three times the recommended agricultural residues tested in the USP standard.

*See* http://www.celestialseasonings.com/our-values-our-tea.

25.    The Company reiterates its "commitment" to the quality and safety associated with its tea products on Celestial Seasonings' "From the Beginning" page by stating that:

> Celestial Seasonings was founded in 1969 by a visionary group of young entrepreneurs with an ambitious goal: to make the world a better place by sharing their knowledge of the health benefits of herbs. They were determined to find success while making their new company "an example that business can work in peace and harmony with the planet."
>
> Forty years have passed, and Celestial Seasonings remains true to our founders' mission to consistently provide, in their words, "superior products" that help people live healthier lives, while still maintaining "high ideals" like farmer-friendly trading practices and the use of sustainable materials.
>
> Our ingredients come from all over the world these days, but our ***all-natural*** teas have always been created in our hometown of Boulder, Colorado. Our passionate employees formulate the recipes, blend the ingredients, design the boxes and package the tea – just like when our founders dried handpicked herbs in a Boulder barn.

**CLASS ACTION COMPLAINT**

> Our commitment to authenticity has made us one of the largest Specialty Tea manufacturers in the North America, serving more than 1.6 billion cups per year, and one of our very first blends – Sleepytime – is still the most beloved herbal tea in the world. We know that our success is due to the millions of tea enthusiasts who share our belief in the truly original blend of "superior products" and "high ideals" that those young entrepreneurs began more than four decades ago.

*See* http://www.celestialseasonings.com/our-values-our-tea.

26.    Moreover, in response to one of Celestial Seasonings "Frequently Asked Questions" - "What are natural flavors?" - the Company responds as follows: "In addition to *natural* herbs, teas, spices and botanicals, some of our teas use *natural* flavors to achieve their unique tastes. The *natural* flavors we use are derived from real ingredients and *do not contain artificial or synthetic additives.*"  *See* http://www.celestialseasonings.com/faqs.

27.    In addition to the foregoing, Defendant prominently markets and advertises the Subject Teas as being "100% Natural" on the face of each box containing its products.  As an example, the following images reflect each side of the packaging for Celestial Seasonings Sleepytime Herbal Tea:



///

///

**CLASS ACTION COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13



14

15

16

17

18

19

20

21

22



23

24   ///

25   ///

26   ///

27

28

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16
17
18
19
20
21
22
23
24
25
26
27
28



13

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19   28.   As a result of Defendant's uniform and long term marketing

20   campaign concerning the "All Natural" and "100% Natural" quality of the

21   Subject Teas, Hain has been able to sell its products at a premium to the

22   consuming public and has also been able to sell more units than it otherwise

23   would.   Moreover, it has done so without revealing that the Subject Teas

24   contain a number of contaminants in the form of pesticides, insecticides, and

25   other chemicals.

26
27
28

**CLASS ACTION COMPLAINT**

29.   For example, as noted above, the Subject Teas contain the following chemicals which are not "natural" and are described as follows:[4]

(a) **Buprofezin** - Buprofezin is an insecticide sold by Dow AgroSciences under the name of Applaud.  According to Dow's website, this insecticide is used "[f]or the control of red scale and white louse scale, jassids (leafhoppers) and longtail, citrus and citrophilous mealybugs in citrus crops; mealybugs in grapes and pears; mealybugs and scales in persimmons, custard apples and passionfruit   and   mango   scale   in   mangos   as   specified[.]"   *See* http://www.dowagro.com/au/prod/app.htm.  *See also* 40 C.F.R. §180.511 (government mandated tolerances for Buprofezin residues);

(b) **Carbendazim** - Carbendazim "is a widely used, broad-spectrum benzimidazole fungicide and a metabolite of benomyl.  It is also employed as a casting worm control agent in amenity turf situations such as golf greens, tennis courts etc. and in some countries is licensed for that use only.  The fungicide is used to control plant diseases in cereals and fruits, including citrus, bananas, strawberries, pineapples, and pomes.  It is also controversially used in Queensland, Australia on macadamia plantations […] Studies have found high doses of carbendazim cause infertility and destroy the testicles of laboratory animals. Maximum pesticide residue limits (MRLs) have reduced since discovering its harmful effects. The MRLs for fresh produce in the EU are now between 0.1 and 0.7 mg/kg with the exception of loquat, which is 2 mg/kg.  The limits for more commonly consumed citrus and pomme fruits are between 0.1 and 0.2 mg/kg."  *See* http://en.wikipedia.org/wiki/Carbendazim.  *See also* http://www.epa.gov/pesticides/factsheets/chemicals/carbendazim-

---

[4] All citations are omitted unless otherwise indicated.

**CLASS ACTION COMPLAINT**

1  fs.htm#carbendazim (noting that this insecticide is not approved for use on
2  foods in the U.S.).

3      (c) **Chlorpyrifos-ethyl** - Chlorpyrifos "is a crystalline organophosphate
4  insecticide. It was introduced in 1965 by Dow Chemical Company and is
5  known by many trade names (see table), including Dursban and Lorsban.  It
6  acts on the nervous system of insects by inhibiting acetylcholinesterase.
7  Chlorpyrifos is moderately toxic to humans and chronic exposure has been
8  linked to neurological effects, developmental disorders, and autoimmune
9  disorders. Exposure during pregnancy retards the mental development of
10 children, and most use in homes has been banned since 2001 in the U.S." *See*
11 http://en.wikipedia.org/wiki/Chlorpyrifos. *See also* 40  C.F.R.  §  180.342
12 (government mandated tolerances for Chlorpyrifos residues).

13     (d) **Chlorfenapyr** - Chlorfenapyr "is a pesticide, and specifically a pro-
14 insecticide (meaning it is metabolized into an active insecticide after entering
15 the host), derived from a class of microbially produced compounds known as
16 halogenated pyrroles.  The [EPA] initially denied registration in 2000 for use on
17 cotton primarily because of concerns that the insecticide was toxic to birds and
18 because effective alternatives were available. However, it was registered by the
19 EPA in January, 2001 for use on non-food crops in greenhouses. In 2005, the
20 EPA established a tolerance for residues of chlorfenapyr in or on all food
21 commodities."  *See* http://en.wikipedia.org/wiki/Chlorfenapyr.  *See also* 40
22 C.F.R. § 180.513 (government mandated tolerances for Chlorfenapyr residues).

23     (e) **Cyhalothrin lambda** - Cyhalothrin "is an organic compound that is
24 used as a pesticide.  It is a pyrethroid, a class of man-made insecticides that
25 mimic the structure and insecticidal properties of the naturally-occurring
26 insecticide pyrethrum which comes from the flowers of chrysanthemums.
27 Synthetic pyrethroids, like lambda-cyhalothrin, are often preferred as an active

28

**CLASS ACTION COMPLAINT**

ingredient in insecticides because they remain effective for longer periods of time [...] Pyrethroids, including lambda-cyhalothrin, disrupt the functioning of the nervous system in an organism. By disrupting the nervous system of insects, lambdacyhalothrin may cause paralysis or death." *See* http://en.wikipedia.org/wiki/Cyhalothrin. *See also* 40 C.F.R. 180.438 (government mandated tolerances for Lambda-cyhalothrin residues).

(f) **Cypermethrin** - Cypermethrin "is a synthetic pyrethroid used as an insecticide in large-scale commercial agricultural applications as well as in consumer products for domestic purposes. It behaves as a fast-acting neurotoxin in insects. It is easily degraded on soil and plants but can be effective for weeks when applied to indoor inert surfaces. Exposure to sunlight, water and oxygen will accelerate its decomposition. Cypermethrin is highly toxic to fish, bees and aquatic insects, according to the National Pesticides Telecommunications Network (NPTN). It is found in many household ant and cockroach killers, including Raid and ant chalk [...] [In Humans], [e]xcessive exposure can cause nausea, headache, muscle weakness, salivation, shortness of breath and seizures." *See* http://en.wikipedia.org/wiki/Cypermethrin. *See also* 40 C.F.R. § 180.418 (government mandated tolerances for Cypermethrin residues).

(g) **p,p'-ddt** - p,p'-ddt is an isomer and major component (77%) of commercial DDT. DDT does not occur naturally and "is an organochlorine insecticide which is a colorless, crystalline solid, tasteless and almost odorless chemical compound. Technical DDT has been formulated in almost every conceivable form including solutions in xylene or petroleum distillates, emulsifiable concentrates, water-wettable powders, granules, aerosols, smoke candles, and charges for vaporisers and lotions [...] In 1962, *Silent Spring* by American biologist Rachel Carson was published. The book catalogued the environmental impacts of the indiscriminate spraying of DDT in the U.S. and

questioned the logic of releasing large amounts of chemicals into the environment without fully understanding their effects on ecology or human health. The book suggested that DDT and other pesticides may cause cancer and that their agricultural use was a threat to wildlife, particularly birds. Its publication was one of the signature events in the birth of the environmental movement, and resulted in a large public outcry that eventually led to DDT being banned for agricultural use in the U.S. in 1972.  DDT was subsequently banned for agricultural use worldwide under the Stockholm Convention, but its limited use in disease vector control continues to this day and remains controversial.  Along with the passage of the Endangered Species Act, the U.S. ban on DDT is cited by scientists as a major factor in the comeback of the bald eagle, the national bird of the United States, and the peregrine falcon from near-extinction in the contiguous U.S." *See* http://en.wikipedia.org/wiki/DDT.  p,P'-DDT is also on California's Proposition 65 list of "Chemicals Known to the State to Cause Cancer or Reproductive Toxicity," dated December 20, 2013. *See* http://oehha.ca.gov/prop65/prop65_list/Newlist.html.

(h) **Diazinon** - Diazinon, "a colorless to dark brown liquid, is a thiophosphoric acid ester developed in 1952 by Ciba-Geigy, a Swiss chemical company (later Novartis and then Syngenta). It is a nonsystemic organophosphate insecticide formerly used to control cockroaches, silverfish, ants, and fleas in residential, non-food buildings. Diazinon was heavily used during the 1970s and early 1980s for general-purpose gardening use and indoor pest control. A bait form was used to control scavenger wasps in the western U.S. Diazinon is used in flea collars for domestic pets in Australia. Residential uses of diazinon were outlawed in the U.S. in 2004 but it is still approved for agricultural uses."   *See* http://en.wikipedia.org/wiki/Diazinon. *See also* 40 C.F.R. § 180.153 (government mandated tolerances for Diazinon residues).

1    (i) **Dimethachlor** - Dimethachlor is a pesticide.  It is listed on the PAN

2    Pesticides Database as an herbicide in the chemical class chloroacetanilide.  *See*

3    http://www.pesticideinfo.org/Detail_Chemical.jsp?Rec_Id=PC38488.

4    (j) **Dimethoate -** Dimethoate "is a widely used organophosphate

5    insecticide used to kill insects on contact. It was patented and introduced in the

6    1950s by American Cyanamid. Like other organophosphates, dimethoate is an

7    acetylcholinesterase inhibitor which disables cholinesterase, an enzyme

8    essential for central nervous system function." *See*

9    http://en.wikipedia.org/wiki/Dimethoate. *See also* 40 C.F.R. § 180.204

10   (government mandated tolerances for Dimethoate residues).

11   (k) **Endosulfan** (Sum) - Endosulfan "is an off-patent organochlorine

12   insecticide and acaricide that is being phased out globally […] Endosulfan

13   became a highly controversial agrichemical due to its acute toxicity, potential

14   for bioaccumulation, and role as an endocrine disruptor. Because of its threats

15   to human health and the environment, a global ban on the manufacture and use

16   of endosulfan was negotiated under the Stockholm Convention in April 2011.

17   The ban will take effect in mid-2012, with certain uses exempted for five

18   additional years.   More than 80 countries, including the European Union,

19   Australia, New Zealand, several West African nations, the United States, Brazil,

20   and Canada had already banned it or announced phase-outs by the time the

21   Stockholm Convention ban was agreed upon. It is still used extensively in

22   India, China, and few other countries. It is produced by […] several

23   manufacturers in India and China." *See*

24   http://en.wikipedia.org/wiki/Endosulfan. *See also* 40 C.F.R. § 180.182

25   (government mandated tolerances for Endosulfan residues).

26   (l) **Fludioxonil** - Fludioxonil "is a synthetic compound of the

27   phenylpyrrole group of substances […] Fludioxonil is a broad-spectrum

28
**CLASS ACTION COMPLAINT**

1  fungicide which is non-systemic with a long residual activity.   The mode of
2  action of fludioxonil is the inhibition of transport-associated phosphorylation of
3  glucose as well as preventing glycerol synthesis.   Being broad spectrum
4  fludioxonil is effective against most major seed diseases[.]" *See*
5  http://www.agchemaccess.com/Fludioxonil. *See also* 40 C.F.R. § 180.516
6  (government mandated tolerances for Fludioxonil residues).

7       (m) **Fipronil** - Fipronil, a slow acting poison, "is a broad-use insecticide
8  that belongs to the phenylpyrazole chemical family. Fipronil is a broad-
9  spectrum insecticide that disrupts the insect central nervous system by blocking
10  the passage of chloride ions through the GABA receptor and glutamate-gated
11  chloride (GluCl) channels, components of the central nervous system. This
12  causes hyperexcitation of contaminated insects' nerves and muscles." *See*
13  http://en.wikipedia.org/wiki/Fipronil. *See also* 40 C.F.R. § 180.517
14  (government mandated tolerances for Fipronil residues).

15       (n) **Hexaflumuron** - Hexaflumuron "is the common name for the active
16  ingredient in several termite control products registered to Dow AgroSciences
17  LLC...Hexaflumuron is an insect growth regulator (IGR) insecticide. Its mode
18  of action is the disruption of chitin synthesis in developing termites. Chitin is
19  the main component of the termite exoskeleton." *See*
20  http://www.dow.com/webapps/lit/litorder.asp?filepath=productsafety/pdfs/nore
21  g/233-00932.pdf&pdf=true.

22       (o) **Imidacloprid** - Imidacloprid "is a systemic insecticide which acts as
23  an insect neurotoxin and belongs to a class of chemicals called the
24  neonicotinoids which act on the central nervous system of insects […]
25  Imidacloprid is currently the most widely used insecticide in the world.
26  Although it is now off patent, the primary manufacturer of this chemical is
27  Bayer CropScience (part of Bayer AG) […] Imidacloprid is widely used for

28

**CLASS ACTION COMPLAINT**

1  pest control in agriculture. Other uses include application to foundations to
2  prevent termite damage, pest control for gardens and turf, treatment of domestic
3  pets to control fleas, protection of trees from boring insects, and in preservative
4  treatment of some types of lumber products (*e.g.*, Ecolife brand).   Recent
5  research suggests that widespread agricultural use of imidacloprid and other
6  pesticides may be contributing to honey bee colony collapse disorder, the
7  decline of honey bee colonies in Europe and North America observed since
8  2006.  As a result, several countries have restricted use of imidacloprid and
9  other neonicotinoids." *See* http://en.wikipedia.org/wiki/Imidacloprid.  *See also*
10  40 C.F.R. § 180.472 (government mandated tolerances for Imidacloprid
11  residues).

12  (p) **Malathion** - Malathion is "a pesticide that is widely used in
13  agriculture, residential landscaping, public recreation areas, and in public health
14  pest control programs such as mosquito eradication.  In the U.S., it is the most
15  commonly used organophosphate insecticide […] Malathion itself is of low
16  toxicity; however, absorption or ingestion into the human body readily results
17  in its metabolism to malaoxon, which is substantially more toxic.  In studies of
18  the effects of long-term exposure to oral ingestion of malaoxon in rats,
19  malaoxon has been shown to be 61 times more toxic than malathion […]
20  According to the [EPA] there is currently no reliable information on adverse
21  health effects of chronic exposure to malathion.  Acute exposure to extremely
22  high levels of malathion will cause body-wide symptoms whose intensity will
23  be dependent on the severity of exposure. Possible symptoms include skin and
24  eye irritation, cramps, nausea, diarrhea, excessive sweating, seizures and even
25  death […] Malathion present in untreated water is converted to malaoxon
26  during the chlorination phase of water treatment, so malathion should not be
27  used in waters that may be used as a source for drinking water, or any upstream

28
**CLASS ACTION COMPLAINT**

1 waters." *See* http://en.wikipedia.org/wiki/Malathion. *See also* 40 C.F.R. §

2 180.111 (government mandated tolerances for Malathion residues).

3     (q) **Profenofos** - Profenofos is an insecticide and is in the chemical class

4 organophosphorus. *See* http://www.pesticideinfo.org/Detail_Chemical.jsp?

5 Rec_Id=PC34257. *See also* 40 C.F.R. 180.404 (government mandated

6 tolerances for Profenofos residues).

7     (r) **Permethrin** - Permethrin "is a common synthetic chemical, widely

8 used as an insecticide, acaricide, and insect repellent. It belongs to the family

9 of synthetic chemicals called pyrethroids and functions as a neurotoxin,

10 affecting neuron membranes by prolonging sodium channel activation […]

11 Permethrin does not present any notable genotoxicity or immunotoxicity in

12 humans and farm animals, but is classified by the [EPA] as a likely human

13 carcinogen, based on reproducible studies in which mice fed permethrin

14 developed liver and lung tumors. Carcinogenic action in nasal mucosal cells

15 due to inhalation exposure is suspected, due to observed genotoxicity in human

16 tissue samples, and in rat livers the evidence of increased pre-neoplastic lesions

17 raises concern over oral exposure." *See* http://en.wikipedia.org/wiki/Permethrin.

18 *See also* 40 C.F.R. § 180.378 (government mandated tolerances for Permethrin

19 residues).

20     (s) **Pyridaben** - Pyridaben is an insecticide. *See*

21 http://www.pesticideinfo.org/Detail_Chemical.jsp?Rec_Id=PC36020. *See also*

22 40 C.F.R. § 180.494 (government mandated tolerances for Pyridaben residues).

23     (t) **Propachlor** - Propachlor "is an herbicide first marketed by Monsanto.

24 It was registered for use in the United States during 1965 […] Monsanto

25 voluntarily discontinued its manufacture in 1998. It is currently listed in the

26 [EPA's] Toxics Release Inventory. In 2008, the European Commission issued a

27 decision withdrawing its approval for use as of March 18, 2009, citing the

28

**CLASS ACTION COMPLAINT**

1   presence of its metabolites in groundwater. Propachlor was added to

2   California's Proposition 65 list as a carcinogen in 2001." *See*

3   http://en.wikipedia.org/wiki/Propachlor. *See also* 40 C.F.R. § 180.211

4   (government mandated tolerances for Propachlor residues).

5       (u) **Propargite** - Propargite "is a pesticide used to kill mites (an

6   acaricide). Symptoms of exposure and poisoning to it are eye and skin

7   irritation, as well as sensitization. It is highly toxic to amphibians, fish, and

8   zooplankton, as well as having potential carcinogenity." *See*

9   http://en.wikipedia.org/wiki/Propargite. Propargite is also on California's

10  Proposition 65 list of "Chemicals Known to the State to Cause Cancer or

11  Reproductive Toxicity," dated December 20, 2013. *See*

12  http://oehha.ca.gov/prop65/prop65_list/Newlist.html. *See also* 40 C.F.R. §

13  180.259 (government mandated tolerances for Propargite residues).

14      (v) **Thiamethoxam** - Thiamethoxam "is an insecticide in the class of

15  neonicotinoids. It has a broad spectrum of activity against many types of

16  insects […] Thiamethoxam is a systemic insecticide that is absorbed quickly by

17  plants and transported to all parts of the plant, where it acts as a deterrent to

18  insect feeding. It is active in the stomach of the insects, and also through direct

19  contact. The compound interferes with information transfer between nerve cells,

20  making the insects become paralyzed." *See*

21  http://en.wikipedia.org/wiki/Thiamethoxam. *See also* 40 C.F.R. § 180.565

22  (government mandated tolerances for Thiamethoxam residues).

23      (w) **Thiacloprid** - Thiacloprid "is an insecticide of the neonicotinoid

24  class. Its mechanism of action is similar to other neonicotinoids and involves

25  disruption of the insect's nervous system by stimulating nicotinic acetylcholine

26  receptors. Thiacloprid was developed by Bayer CropScience for use on

27  agricultural crops to control a variety of sucking and chewing insects, primarily

28

aphids and whiteflies." *See* http://en.wikipedia.org/wiki/Thiacloprid. *See also* 40 C.F.R. § 180.594 (government mandated tolerances for Thiacloprid residues).

     (x) **Triazophos -** Triazophos is an insecticide in the chemical class organophosphorus. *See* http://www.pesticideinfo.org/Detail_Chemical.jsp? Rec_Id=PC34613. "Triazophos primarily controls sucking and chewing insects in cotton, rice, oil seeds and vegetables, fruits and plantation, like tea[.]" *See* http://www.cheminovaindia.in/docs/insecticides/triazophos%20%28trifos%29/index.html.

     30.   In addition to listing the above contaminants, the Report identified and charted (based on Eurofins' test results) which of the foregoing contaminants were found in each of the Subject Teas and at what levels:



**CLASS ACTION COMPLAINT**

| Celestial Seasonings Tea Sample | Buprofezin | Carbendazim | Chlorpyrifos-ethyl | Chlorfenapyr | Cyhalothrin lambda | Cypermethrin | p,p'-DDT | Diazinon | Dimethachlor | Dimethoate | Endosulfan (Sum) | Fludioxonil | Fipronil | Hexaflumuron | Imidacloprid | Malathion | Profenofos | Permethrin | Pyridaben | Propachlor | Thiamethoxam | Thiacloprid | Triazophos | Detected U.S. Adulterants |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Eng Bkfst Black K-Cup | | | | | | * | * | | | | | | | | * | | | | | | * | | | 5 |
| Authentic Green Tea | * | | * | * | * | | | | | | | | * | * | | * | | | | | | | | 8 |
| Green Tea Honey Lem Gin | * | | * | * | * | | | | | | | | * | * | | | * | | | | | | | 7 |
| Green Tea Peach Blossom | * | | * | * | * | | | | | | | * | * | * | | * | | | | | | | * | 9 |
| Green Tea Rasp Gardens | * | | * | * | * | | | | | | | | * | * | | * | | | | | * | * | | 9 |
| Rooibos Safari Spice | | | | | | | | | | | | | | | | | | | | | | | | 0 |
| Sleepytime Herb Teas | | * | | | | | * | * | | | | * | * | | | | | | | | | | | 5 |
| Sleepytime Kids Gdnt Grape | * | * | | | | | * | * | | | | * | * | | * | | | | | | | | | 7 |
| Antioxidant Max Blckbry Pom | * | | * | * | * | | | | | * | | * | | | * | | | | | | | | | 7 |
| Antioxidant Max Blood Orange | | | * | * | * | | | | | | | | * | | | * | | | | | | * | | 7 |
| Antioxidant Max Dragon Fruit | | | * | * | * | | | | | | | | * | | | * | | | | | * | * | | 8 |

*violation of U.S. 40 CFR 180; pesticide residue detected for which there is no established EPA tolerance level or for which such tolerance level was exceeded.

Total 72
Average Violations per Sample 6.5

| Tea Sample Description | | Independent Testing Results - Pesticides | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Product Name | Hain Tea Category | U.S. Adulterants Detected | Appears to Violate U.S. Regs[1] | Calif Prop 65 | PAN Class[2] Toxic | Bad Actor | Human Carcinogen Class[3] Known | Likely | Possible | Suggestive Evidence of |
| Eng Bkfst Black K-Cup | Black | 5 | Yes | Yes | 3 | 1 | 1 | 1 | 1 | - |
| Authentic Green Tea | Green | 8 | Yes | | 6 | 2 | - | 1 | 1 | 2 |
| Green Tea Honey Lem Gin | Green | 7 | Yes | | 5 | - | - | 1 | 1 | 2 |
| Green Tea Peach Blossom | Green | 9 | Yes | Yes | 7 | 1 | 1 | - | 2 | 2 |
| Green Tea Rasp Gardens | Green | 9 | Yes | Yes | 7 | 2 | 1 | - | 1 | 2 |
| Sleepytime Herb Teas (Flagship) | Herbal | 5 | Yes | | 5 | 4 | - | - | 2 | 1 |
| Sleepytime Kids Gdnt Grape | Herbal | 7 | Yes | Yes | 7 | 6 | 1 | - | 2 | 1 |
| Rooibos Safari Spice | Rooibos | - | | | - | - | - | - | - | - |
| Antioxidant Max Blckbry Pom | Wellness | 7 | Yes | Yes | 5 | - | 1 | - | 1 | 2 |
| Antioxidant Max Blood Orange | Wellness | 7 | Yes | Yes | 5 | 1 | 1 | - | 1 | 2 |
| Antioxidant Max Dragon Fruit | Wellness | 8 | Yes | Yes | 6 | 2 | 1 | 1 | 1 | 2 |

[1] Title 40 Code of Federal Regs ("CFR"), sect 180 (Tolerances and Exemptions for Pesticide Chemical Residues in Food).
[2] Pesticide Action Network ("PAN") database www.pesticideinfo.org.
[3] Sources include U.S. EPA Office of Pesticide Programs "Chemicals Evaluated for Carcinogenic Potential", Pesticide Action Network database, and Calif Proposition 65 http://oehha.ca.gov/prop65/prop65_list/files/P65single010413.pdf.

See also Exhibit 1 attached hereto, pages 7 and 8.

31.   In response to the Report, and Eurofins' detailed analysis attached thereto in Appendix I, Hain posted a "Safety Assurance" statement on the Celestial Seasonings website which noted:

CLASS ACTION COMPLAINT

A message to Celestial Seasonings® Customers:

Celestial Seasonings has always offered natural products that are good for you and good for the world — our customers' health and safety is our number one priority. But several months ago, a report was issued questioning the safety of some of our teas. We'd like to take this opportunity to respond to the false and misleading statements contained within that report.

The report was issued in February, 2013 by a "short seller," an investment firm which stands to gain financially if our parent company's stock price declines. By its nature, this kind of firm is motivated to spread false, incomplete and out-of-context information. Several subsequent articles and blog postings have accepted the report's claims without questioning the motivation of the report's author.

Providing safe products has been our top priority for more than 40 years. So when we saw the report, we reacted immediately. We sent the same teas highlighted in the report for testing to the National Food Lab (NFL), an accredited industry-leading third-party lab with decades of experience designing and executing food safety programs.

NFL's independent testing reaffirmed that Celestial Seasonings teas are safe and follow strict industry guidelines. ***In addition, NFL detected no pesticides in the brewed Celestial Seasonings teas they tested.***

Celestial Seasonings follows a stringent testing protocol for all incoming raw ingredients. We test for commonly used pesticides, herbicides and insecticides, and we reject ingredients when these substances are detected beyond acceptable limits as defined by industry-recognized and/or government agencies, including the U.S. EPA, U.S. FDA, European Union Pharmacopeial Convention, and Codex Alimentarius.

To further reassure you about the safety of our teas, we are also members of the Global Food Safety Initiative (GFSI), an industry group whose mission is to provide continuous improvement in food safety management systems to ensure confidence in the delivery of safe food to consumers worldwide. Additionally, our facility is audited annually by a third party to comply with Safe Quality Foods (SQF) certification under GFSI.

In summary, because of our own rigorous quality and safety standards, the rigid testing protocol that our ingredients are subjected to, and the additional third-party tests conducted by the NFL, we are confident that all Celestial Seasonings teas are

**CLASS ACTION COMPLAINT**

safe and in no way "dangerous" as the "short seller" firm's report concluded.

Celestial Seasonings was founded in 1969 with the mission to provide good health, great taste and innovative variety in our products while maintaining a commitment to social and environmental responsibility. We are a pioneering member of the natural foods industry here in Colorado and across the country, and we remain focused on our founding mission.

*See* http://www.celestialseasonings.com/safety-assurance.

32.     However, what is noticeably absent from Hain's response is that it has not published any specifics concerning NFL's purportedly independent testing.   Further, it is unclear why NFL tested *brewed* products when that is not the state in which consumers purchase the Subject Teas.

33.     Moreover, at least one publication has noted that NFL "proudly lists Celestial Seasonings as one of its clients on its website.   Saying, 'somewhere along the line, we have had a hand in their success.'"   *See* http://www.examiner.com/article/dangerously-high-pesticide-levels-found-celestial-seasonings-teas.   This raises into question the objectivity of NFL, which appears to have a long standing business relationship with the Company, as compared to Eurofins' which is a well respected worldwide analytic testing company.

34.     In addition, Hain's "Safety Assurance" statement, while transparently challenging the motivations behind the issuance of the Report, does not deny the accuracy of Eurofins' findings concerning the Subject Teas. Instead, Defendant provides little more than a cursory response to the Report and its findings without the disclosure of *any* evidence to the contrary.

35.     In light of the foregoing, Defendant's "All Natural" and "100% Natural" claims, which are marketed and advertised to the Class in a uniform manner, are false and misleading on their face.

CLASS ACTION COMPLAINT

## FIRST CAUSE OF ACTION

### (Violations of the Unfair Competition Law,
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

36.    Plaintiff, on behalf of himself and on behalf of all others similarly situated, realleges and incorporates herein by reference each of the foregoing paragraphs.

37.    The UCL defines unfair business competition to include any "unfair," "unlawful," or "fraudulent" business or practice. Cal. Bus. & Prof. Code §§ 17200, *et seq.*  Unfair competition also includes "unfair, deceptive, untrue or misleading advertising."  The UCL also provides for injunctive relief and restitution for violations.

38.    Defendant committed acts of unfair competition, as defined by Cal. Bus. & Prof. Code § 17200, by falsely labeling the Subject Teas.

39.    Defendant's conduct is unlawful because it violates the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* as alleged herein; the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* as alleged herein; California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 109875, *et seq.* and other State and Federal laws.

40.    Defendant's conduct is unfair in that the harm to Plaintiff and the Class arising from it outweighs the utility, if any, of those practices and because it offends established public policy and/or is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to Plaintiff and Class members. Defendant's actions also violate the spirit of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*; the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*; California's Sherman Food, Drug, and Cosmetic

**CLASS ACTION COMPLAINT**

1  Law, Cal. Health & Safety Code §§ 109875, *et seq.* and other State and Federal

2  laws.

3      41.    Defendant's conduct was fraudulent and likely to deceive

4  reasonable consumers in that Defendant falsely represented the Subject Teas as

5  "100% Natural" and omitted and/or failed to disclose material facts regarding

6  the Subject Teas. Defendant's failure to disclose the true contents of its Subject

7  Teas constitutes deception by omission. Defendant had a duty to disclose these

8  material facts.

9      42.    The facts concealed and omitted are material facts in that a

10 reasonable consumer would have considered them important in deciding

11 whether or not to purchase the Subject Teas.

12     43.    As a result of Defendant's practices, Plaintiff suffered injury in

13 fact and lost money. As a direct and proximate result of the acts and practices

14 alleged above, pursuant to Cal. Bus. & Prof. Code § 17203. Plaintiff, on behalf

15 of himself and all others similarly situated, seeks: (a) an Order requiring

16 Defendant to cease the acts of unfair competition alleged herein; (b) full

17 restitution of all monies paid to Defendant as a result of its deceptive practices,

18 including, but not limited to, disgorgement of all profits derived from the sale of

19 the Subject Teas; (c) interest at the highest rate allowable by law; and (d) the

20 payment of Plaintiff's attorneys' fees and costs pursuant to, *inter alia,* Cal.

21 Code of Civ. Proc. § 1021.5.

22                    **SECOND CAUSE OF ACTION**

23               **(Violations of Consumers Legal Remedies Act,**

24                  **Cal. Civ. Code §§ 1750, *et seq*.)**

25     44.    Plaintiff, on behalf of himself and on behalf of all others similarly

26 situated, realleges and incorporates herein by reference each of the foregoing

27 paragraphs.

28

**CLASS ACTION COMPLAINT**

45.    At all relevant times, Plaintiff and each proposed Class member was a "consumer," as that term is defined in Cal. Civ. Code § 1761(d).

46.    At all relevant times, the Subject Teas constituted "goods," as that term is defined in Civ. Code § 1761(a).

47.    At all relevant times, Defendant was a "person," as that term is defined in Civ. Code § 1761(c).

48.    At all relevant times, Plaintiff and each proposed Class Member's purchase of the Subject Teas constituted a "transaction," as that term is defined in Civ. Code § 1761(e).

49.    Defendant's practices, acts, policies, and course of conduct violated the CLRA in that Defendant represented that its Subject Teas have characteristics, ingredients, uses and benefits which they do not have, in violation of §1770(a)(5) of the CLRA.

50.    Defendant's practices, acts, policies, and course of conduct violated the CLRA in that Defendant represented that its Subject Teas were of a particular standard, quality, or grade, when they are another, in violation of § 1770(a)(7) of the CLRA.

51.    Defendant's practices, acts, policies, and course of conduct violated the CLRA in that Defendant advertised its Subject Teas with the  intent not to sell them as advertised, in violation of § 1770(a)(9) of the CLRA.

52.    Defendant's practices, acts, policies, and course of conduct violated the CLRA in that Defendant represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not, , in violation of § 1770(a)(16) of the CLRA.

53.    Plaintiff has complied with Cal. Civ. Code § 1782(a) by serving a written letter on Defendant notifying it of the CLRA violations alleged herein. If Defendant has not rectified the issues complained of herein as set forth in the

30

**CLASS ACTION COMPLAINT**

CLRA notice, Plaintiff will amend this complaint to seek monetary relief, including restitution and damages under the CLRA. At this time, Plaintiff seeks an Order requiring Defendant to cease the acts of unfair competition alleged herein.

## THIRD CAUSE OF ACTION

### (Violations of Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

54.     Plaintiff, on behalf of himself and on behalf of all others similarly situated, realleges and incorporates herein by reference each of the foregoing paragraphs.

55.     Defendant disseminated untrue or misleading advertising in the public domain in violation of Cal. Bus. & Prof. Code §§ 17500, *et seq.*, by representing that the Subject Teas are "100% Natural," when they are not but in fact contain toxins.

56.     Defendant committed such violations of the False Advertising Law with actual knowledge or knowledge fairly implied on the basis of objective circumstances.

57.     Plaintiff reasonably relied on Defendant's representations made in violation of Cal. Bus. & Prof. Code §§ 17500, *et seq.*

58.     As a result of Defendant's violations, Plaintiff suffered injury in fact and lost money.

59.     Plaintiff, on behalf of himself and all others similarly situated, seeks: (a) an Order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of its deceptive practices, including, but not limited to, disgorgement of all profits derived from the sale of the Subject Teas; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, *inter alia,* Cal. Code Civ. Proc. § 1021.5.

**CLASS ACTION COMPLAINT**

## **FOURTH CAUSE OF ACTION**

### **(Breach of Contract)**

60.    Plaintiff, on behalf of himself and on behalf of all others similarly situated, realleges and incorporates herein by reference each of the foregoing paragraphs.

61.    Plaintiff and the members of the Class entered into a contract with Defendant through the purchase of the Subject Teas.

62.    Implied in the contract between customers and Defendant was that the Subject Teas were labeled accurately and properly.

63.    Defendant breached these contracts by mislabeling the true contents of the Subject Teas and/or selling the mislabeled Subject Teas.

64.    As a direct and proximate result of Defendant's breaches of contract, Plaintiff and Class Members have been damaged in amounts to be determined at trial.

## **FIFTH CAUSE OF ACTION**

### **(Intentional Misrepresentation)**

65.    Plaintiff, on behalf of himself and on behalf of all others similarly situated, realleges and incorporates herein by reference each of the foregoing paragraphs.

66.    During the relevant time period, Defendant made the representations to Plaintiff and Class members, which were contained in Defendant's advertising, on its website, and on the labels of Subject Teas.  The representations that were made to Class members were substantially similar for the purposes of this litigation.

**CLASS ACTION COMPLAINT**

67.     Defendant made the representation that the Subject Teas were "100% Natural." The representation that Defendant made was false. The true facts are that the Subject Teas contain toxins.

68.     When Defendant made the subject representations, it knew they were false and made the representations with the intent to deceive and defraud Plaintiff and Class members to induce them to act in reliance on those representations, or with the expectation that they would so act. The purpose of representing that the Subject Teas were "100% Natural" was to deceive Plaintiff and Class members into purchasing the Subject Teas. Defendant knew that if it informed the public of the true facts no one would consume the Subject Teas, nor would they have been permitted for sale.

69.     Plaintiff and Class members, at the time the representations were made by Defendant, and at the time they took the actions herein alleged, were ignorant of the falsity of the representations and believed them to be true. In reliance on these representations, Plaintiff and Class members were induced to purchase the Subject Teas and consume them. Had Plaintiff and Class members known the actual facts, they would not have taken such action. Reliance on Defendant's representations was justified because it was offering its Subject Teas through reputable retail establishments throughout the Country. Plaintiff and Class members had no reason to believe that Defendant would act otherwise than as represented in its advertising.

70.     In the alternative, Defendant, under a duty to speak, suppressed material facts from Plaintiff and the Class regarding the presence of toxins in the Subject Teas, in violation of advertising laws and other State and Federal regulations.

**CLASS ACTION COMPLAINT**

71.    As a result of Defendant's fraudulent conduct, Plaintiff and Class members paid monies to Defendant to which it was not entitled, and have suffered monetary damages in an amount to be proven at trial.

72.    The aforementioned conduct of Defendant was an intentional misrepresentation, omission, deceit, or concealment of a material fact or facts known to Defendant with the intention of Defendant to deprive Plaintiff and Class members of property or legal rights or otherwise cause injury, and was despicable conduct that subjected Plaintiff and Class members to a cruel and unjust hardship in conscious disregard of their rights, so as to justify an award of exemplary and punitive damages.

## SIXTH CAUSE OF ACTION
### (Negligent Misrepresentation)

73.    Plaintiff, on behalf of himself and on behalf of all others similarly situated, realleges and incorporates herein by reference each of the foregoing paragraphs.

74.    During the relevant time period, Defendant made the representations to Plaintiff and Class members, which were contained in Defendant's advertising, on its website, and on the labels of the Subject Teas. The representations that were made to Class members were substantially similar for the purposes of this litigation.

75.    Defendant made the representation that the Subject Teas were "100% Natural".  The representation that Defendant made was false.  The true facts are that the products contain toxins.

76.    When Defendant made the representation set forth above, it knew or should have known them to be false and made the representations with the intention to deceive and defraud Plaintiff and Class members to induce them to

**CLASS ACTION COMPLAINT**

act in reliance upon those representations, or with the expectation that they would so act.

77.    Plaintiff and Class members, at the time the representations were made by Defendant, and at the time they took the actions herein alleged, were ignorant of the falsity of the representations and believed them to be true.  In reliance on these representations, Plaintiff and Class members were induced to purchase the Products and consume them.  Had Plaintiff and Class members known the actual facts, they would not have taken such action.  Reliance on Defendant's representations was justified because it was offering the Subject Teas through reputable retail establishments throughout the Country.  Plaintiff and Class members had no reason to believe that Defendant would act otherwise than as represented in its advertising.

78.    In the alternative, Defendant, under a duty to speak, suppressed material facts from Plaintiff and the Class regarding the presence of toxins in the Subject Teas in violation of advertising laws and other State and Federal regulations.

79.    As a result of Defendant's fraudulent conduct, Plaintiff and Class members paid monies to Defendant to which they were not entitled, and have suffered monetary damages in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION

### (Unjust Enrichment)

80.    Plaintiff, on behalf of himself and on behalf of all others similarly situated, realleges and incorporates herein by reference each of the foregoing paragraphs.

81.    By its wrongful acts and omissions, Defendant was unjustly enriched at the expense of Plaintiff and Class members, who did not receive the goods to which they were entitled, namely products that were "100% Natural"

**CLASS ACTION COMPLAINT**

1  and did not contain toxins, for the payments made to Defendant, and thus
2  Plaintiff and the Class was unjustly deprived.

3      82.    It would be inequitable and unconscionable for Defendant to retain
4  the profit, benefit and/or other compensation it obtained from its deceptive,
5  misleading, and unlawful conduct alleged herein.

6      83.    Plaintiff and Class members seek restitution from Defendant, and
7  seek an order from the Court disgorging all profits, benefits, and other
8  compensation obtained by Defendant from its wrongful conduct.

9                    **EIGHTH CAUSE OF ACTION**
10                   **(Breach of Express Warranty)**

11     84.    Plaintiff, on behalf of himself and on behalf of all others similarly
12  situated, realleges and incorporates herein by reference each of the foregoing
13  paragraphs.

14     85.    Defendant made an express warranty and/or approved the use of
15  the express warranty to Plaintiff and members of the Class that the Subject Teas
16  they were purchasing were "100% Natural."

17     86.    The "100% Natural" express warranty made to Plaintiff and the
18  Class appears on every package of the Subject Teas.  This promise regarding
19  the nature of the products marketed by Defendant specifically related to the
20  goods being purchased and became the basis of the bargain.

21     87.    Plaintiff and the Class purchased the Subject Teas based on the
22  belief that they conformed to the express warranties that were made on the
23  products' packaging.

24     88.    Defendant breached the express warranty made to Plaintiff and
25  members of the Class by failing to supply goods that conformed to the warranty
26  made. As a result, Plaintiff and the members of the Class suffered injury and
27  deserve to be compensated for the damages they suffered.

28

89.     Plaintiff and the members of the Class paid money for the Subject Teas labeled "100% Natural." However, Plaintiff and the members of the Class obtained products with ingredients that are not "100% Natural," but instead contained pesticides and insecticides. If Plaintiff and other members of the Class had known of the true nature of the Subject Teas, they would not have purchased them.

90.     Plaintiff and the Class are therefore entitled to recover damages of the amounts they paid for the Subject Teas.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests on behalf of himself and other members of the Class, for judgment against Defendant as follows:

1.     For preliminary and permanent injunctive relief enjoining Defendant, its agents, servants and employees, and all persons acting in concert with Defendant, from engaging in, and continuing to engage in, the unfair, unlawful and/or fraudulent business practices alleged above and that may yet be discovered in the prosecution of this action;

2.     For certification of the proposed Class, appointment of Plaintiff as the Class Representative and appointment of Plaintiff's counsel as Class Counsel to represent the Class;

3.     For damages, restitution and disgorgement of all money or property wrongfully obtained by Defendant by means of their herein-alleged unlawful, unfair, and fraudulent business practices;

4.     Recovery of the amounts by which Defendant have been unjustly enriched;

5.     For an accounting by Defendant for any and all profits derived by Defendant from their herein-alleged unlawful, unfair and/or fraudulent conduct and/or business practices;

**CLASS ACTION COMPLAINT**

1        6.     For attorneys' fees and expenses pursuant to all applicable laws

2   including, without limitation, Cal. Code of Civil Procedure § 1021.5 and the

3   common law private attorney general doctrine; and

4        7.     For costs of suit; and for such other and further relief as the Court

5   deems just and proper.

## JURY DEMAND

7        Plaintiff hereby demands a trial by jury.

8   Dated: December 18, 2013     **FINKELSTEIN THOMPSON LLP**

By: _____

Rosemary M. Rivas
505 Montgomery Street, Suite 300
San Francisco, California 94111
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

*Attorneys for Plaintiff Richard B. Levin*

**CLASS ACTION COMPLAINT**

## AFFIDAVIT OF RICHARD B. LEVIN

1.    I, Richard B. Levin, submit this affidavit pursuant to California *Civil Code* § 1780(d) of the Consumers Legal Remedies Act and declare the following.

2.    I am the named plaintiff in this action and I am a resident and a citizen of the State of California. I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

3.    During the last three years, I have purchased tea products which are the subject of this Complaint in Los Angeles, California.

4.    I did so based on information and advertising disseminated by The Hain Celestial Group, Inc.

5.    While living in California, I purchased Sleepytime Herbal Tea for personal consumer use. I read the label for these tea products, which indicated that they were "100% Natural," and purchased these products in reliance on that claim. The "100% Natural" representation on the product packaging was a material and substantial factor which influenced my decision to purchase this tea. I would not have purchased these tea products had I known that they are not, in fact, "100% Natural."

6.    The Complaint in this action has been filed in the proper place for trial under California *Civil Code* § 1780(d) in that Defendant conducts a substantial amount of business in this District.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on December 18th, 2013 at ___Camarillo___, California.

RICHARD B. LEVIN

**CLASS ACTION COMPLAINT**

# EXHIBIT I

# GLAUCUS
# RESEARCH GROUP

*"Everything we do today is basically natural or organic"*     — *Hain CEO Irwin Simon* CNBC

*THIS RESEARCH REPORT EXPRESSES OUR OPINIONS. Use Glaucus Research Group California, LLC's research opinions at your own risk. You should do your own research and due diligence before making any investment decision with respect to the securities covered herein. This is not investment advice nor should it be construed as such.  We are short Hain and therefore stand to realize significant gains in the event that the price of stock declines. We do not express any opinion as to whether any of the food products discussed herein are safe for human consumption.  Laboratory test results are presented as is, without any warranty of any kind (whether express or implied) and are not intended to form the basis for any scientific conclusions or any claims regarding the health effects of the tested products.  Please refer to our full disclaimer on page three of this report*

**COMPANY:** THE HAIN CELESTIAL GROUP, INC. | NASDAQ: HAIN
**INDUSTRY:** Processed and Packaged Goods

Recommendation:
## Strong Sell

12mo Price Target:
## US$ 38.00

Price:
## US$ 58.05
As of Market Close 2/20/2013

Market Cap:
## US$ 2.7B

Public Float:
## 38mm shares

Daily Volume:
## 1mm shares
(Avg. 10 days)

THE HAIN CELESTIAL GROUP, INC. ("Hain" or the "Company") is a $3 billion roll-up of disparate food brands that we believe is masquerading as a healthy/organic food company. In this report we present compelling evidence (based on independent lab tests and other due diligence) suggesting that products representing 85% of the Company's 2012 internal growth are beset by quality control issues and/or deceptive marketing practices.  We believe that once the Company's exaggerated claims are exposed, Hain will revert to its historical internal growth rate of 3% and eventually trade in-line with mature packaged goods companies at a 15.5x forward p/e multiple.  As Hain currently trades at 24x forward earnings, this implies downside of 35%.

**TROUBLED CONSUMER PRODUCTS**

1.  **The Sinking Flagship.  Celestial Seasonings** is Hain's flagship brand and also one of its most profitable product lines.  It is built on the perception that its teas are '100% natural' and healthy.   As consumers, we decided to verify such claims by sending eleven of the Company's popular teas to Eurofins, an accredited and independent lab that is the global leader in drug and food testing.  Lab tests showed the following:

    a.   **Tea Samples Violate US Law.**  91% of the Celestial Seasonings' teas we tested violated U.S. pesticide standards (CFR 40 section 180), meaning such teas are 'adulterated' under the FDCA and subject to federal regulatory action.  All violative samples contained traces of known or possible human carcinogens.

    b.   **Children's Tea Sample Contained Traces of a Known Carcinogen.**  Independent lab tests revealed that the Celestial Seasonings' Sleepytime Kids Goodnight Grape Herbal Tea sample contained 0.26 ppm of Propachlor, a known carcinogen for which there is no safe harbor limit established under California's Proposition 65.

    c.   **'Wellness Tea' Samples Also Appear to Violate California Proposition 65.**  Six other tea samples, including all three teas that we sampled from Hain's "Wellness Tea" category, contained traces of Propargite, a known carcinogen and developmental toxin for which there is also no safe harbor limit under California's Proposition 65.

    d.   **Repeat Offender.**   The FDA has issued two prior Warning Letters to Celestial Seasonings for quality control issues.  Given our test results, we expect further regulatory scrutiny.

2.  **Nectar of the Gods?** Hain markets Greek Gods Yogurt (responsible for an estimated 37% of its internal growth in 2012), as an 'authentic' Greek-style yogurt. We believe this marketing to be deceptive because Greek Gods contains only one-third of the protein and 400% more fat when compared with 'authentic' Greek style-yogurts such as Chobani.   Consumers are catching on, and sales growth is sharply decelerating.

COMPANY: THE HAIN CELESTIAL GROUP, INC. | NASDAQ: HAIN
INDUSTRY: Processed and Packaged Goods

3. **Sensible Portions Veggie Straws**. Sensible Portions accounts for an estimated 40% of Hain's 2012 internal growth. We believe that these 'veggie straws' are another example of deceptive marketing because they are promoted as a healthy snack yet appear to have very little vitamin content. Sales growth has imploded, we believe due to the launch of competing products and increasing consumer awareness of this product's true nutritional value.

4. **DeBoles Organic Pasta**. Independent lab tests detected that multiple samples of DeBoles pastas, labeled 'certified USDA organic,' contained traces of MGK-264 and piperonyl butoxide, which are EPA Group C Possible Human Carcinogens associated with conventional pesticide use.

5. **Deceptively Labeled Face Wash and Shampoo**? Hain is currently defending against a class action lawsuit alleging that its personal care brands Jason and Avalon Organics are deceptively mislabeled as 'organic.' For example, in one Jason product labeled 'organic,' **only 1 of 19** ingredients was actually organic.

6. **Spectrum Organic – More Deceptive Labeling**. In 2010 the FDA warned Hain because it was labeling its Spectrum Organic All Vegetable Shortening as 'cholesterol free' when it was not.

## BUSTED GROWTH STORY

7. **Non-'Organic' Growth Rate**. Hain has masked anemic internal growth through serial acquisitions and discontinued operations. If you back out acquisitions and accounting gimmicks, we estimate Hain's sales averaged 3% internal growth between 2000 and 2011. This compares unfavorably to a 12% average internal growth rate for the U.S. natural and organic food category as a whole.

8. **The Party is Over**. Hain's estimated 7% internal growth rate in 2012 was driven primarily by Greek Gods Yogurt and Sensible Portions (Veggie Straws). Sales growth of both products appears to have rapidly decelerated in recent months. Excluding these products and the troubled Celestial Seasonings line, we estimate 2012 internal sales *grew by only 1%*, which is more comparable to a mature packaged goods company (3%-4% growth) than a leader in organic and natural foods (10%-20% growth).

## INSIDER SALES

9. **Simon Says, Simon Sells**. During the last 21 months, Hain CEO Irwin Simon took advantage of a temporary boost in Hain's share price to **dump $33 million of stock**. Worse still, Simon sold his stock in eleven tranches, **all of which began within hours to 28 trading days after Simon appeared on CNBC to tout the growth prospects of his Company**.

10. **Valuation**. A likely reversion to Hain's historical internal growth rate of 3% suggests that the Company's stock should trade in line with mature packaged food companies with similar growth profiles, not healthy/organic food comps. A 15.5x forward p/e implies a stock price of $38, around 35% below today's stock price of $58 per share.

By contrast, we have identified WHITEWAVE FOODS ("WhiteWave") (**NYSE: WWAV**) as an alternative healthy foods investment. WhiteWave appears to have sustainable double-digit internal growth rates and we tested a number of its organic and GMO-free products against WhiteWave's claims, all of which came back 100% clean. Currently trading at 21x forward earnings, we expect WhiteWave to trade more in line with other healthy food comps at 30x as the market learns of the authenticity of its products.

# Disclaimer

*You are reading a short-biased opinion piece.  Obviously, we will make money if the price of HAIN stock declines.  This report and all statements contained herein are the opinion of Glaucus Research Group California, LLC, and are not statements of fact. You can publicly access any piece of evidence cited in this report or that we relied on to write this report. Think critically about our report and do your own homework before making any investment decision.  We are prepared to support everything we say in a court of law.*

*As of the publication date of this report, Glaucus Research Group California, LLC (a California limited liability company) (possibly along with or through our members, partners, affiliates, employees, and/or consultants) along with our clients and/or investors has a direct or indirect short position in HAIN's stock (and/or options), and therefore stands to realize significant gains in the event that the price of HAIN's stock declines.  As of the publication date of this report, Glaucus Research Group California, LLC (possibly along with or through our members, partners, affiliates, employees, and/or consultants) along with our clients and/or investors may have a direct or indirect long position in WWAV's stock (and/or options), and therefore stands to realize significant gains in the event that the price of WWAV's stock rises.  Use Glaucus Research Group California, LLC's research at your own risk. You should do your own research and due diligence before making any investment decision with respect to the securities covered herein.  The opinions expressed in this report are not investment advice nor should they be construed as investment advice.*

*We do not express any opinion as to whether any of the food products discussed herein are safe for human consumption.  Laboratory test results are presented as is, without any warranty of any kind (whether express or implied) and are not intended to form the basis for any scientific conclusions or any claims regarding the health effects of the tested products.*

*Following publication of this report, we intend to continue transacting in the securities covered therein, and we may be long, short, or neutral at any time hereafter regardless of our initial opinion. This is not an offer to sell or a solicitation of an offer to buy any security, nor shall any security be offered or sold to any person, in any jurisdiction in which such offer would be unlawful under the securities laws of such jurisdiction.  To the best of our ability and belief, all information contained herein is accurate and reliable, and has been obtained from public sources we believe to be accurate and reliable, and who are not insiders or connected persons of the stock covered herein or who may otherwise owe any fiduciary duty or duty of confidentiality to the issuer. However, such information is presented "as is," without warranty of any kind– whether express or implied.*

*Glaucus Research Group California, LLC makes no representation, express or implied, as to the accuracy, timeliness, or completeness of any such information or with regard to the results to be obtained from its use. All expressions of opinion are subject to change without notice, and Glaucus Research Group California, LLC does not undertake a duty to update or supplement this report or any of the information contained herein.  By downloading and opening this report you knowingly and independently agree: (i) that any dispute arising from your use of this report or viewing the material herein shall be governed by the laws of the State of California, without regard to any conflict of law provisions; (ii) to submit to the personal and exclusive jurisdiction of the superior courts located within the State of California and waive your right to any other jurisdiction or applicable law, given that Glaucus Research Group California, LLC is a California limited liability company that operates exclusively in California; and (iii) that regardless of any statute or law to the contrary, any claim or cause of action arising out of or related to use of this website or the material herein must be filed within one (1) year after such claim or cause of action arose or be forever barred.  The failure of Glaucus Research Group California, LLC to exercise or enforce any right or provision of this disclaimer shall not constitute a waiver of this right or provision. If any provision of this disclaimer is found by a court of competent jurisdiction to be invalid, the parties nevertheless agree that the court should endeavor to give effect to the parties' intentions as reflected in the provision and rule that the other provisions of this disclaimer remain in full force and effect, in particular as to this governing law and jurisdiction provision.*

3

THE HAIN CELESTIAL GROUP, INC. (NASDAQ:HAIN)   WWW.ABSURDRESEARCH.COM

## THE BOY WHO CRIED NATURAL

Hain is a $3 billion roll-up of disparate consumer food brands that we believe is masquerading as a healthy/organic food business. The Company touts its motto, 'healthy way of life,' through a suite of purportedly healthy brands such as Celestial Seasonings tea, Greek Gods Yogurt, Sensible Portions Veggie Straws, DeBoles organic pasta, and many more.



### Being Natural and Organic Is in Our Heart

A Healthy Way of Life™

Our mission is to be the leading marketer, manufacturer and seller of natural and organic products by anticipating and exceeding consumer expectations in providing quality, innovation, value and convenience.

We are committed to growing our Company while continuing to implement environmentally sound business practices and manufacturing processes.

*Hain's Brands*

Hain's stock price has recently ridden the wave of investor dollars pouring into healthy food products. The Company currently trades at 24x 2013 earnings or a 60%+ premium to packaged food peers (trading at 15.5x) that, by our estimates, have a similar long-term internal growth rate of 3-4%. This is a lofty valuation for a Company with, in our view, little substantive connection to more authentic healthy food investments.

In this report, we examine recurring quality control problems and a pattern of questionable marketing/labeling practices with some of Hain's most important consumer products. Not only do independent lab tests show that some of its most prominent 'healthy' products violate US pesticide regulations, but we also discuss how its other supposedly healthy products are, in reality, indistinguishable from much cheaper, conventional brands. We believe that Hain is significantly overvalued and that its stock price is destined to collapse under the weight of quality control issues, questionable labeling practices and anemic internal growth.

We believe that by comparison, WhiteWave is an authentic organic and healthy food company, which recently debuted on the NYSE. We directed Eurofins to test various WhiteWave organic, non-GMO and anti-biotic free products against their respective claims, and the independent lab tests revealed that all of WhiteWave's products came back 100% clean. WhiteWave appears to have a suite of authentic USDA organic products that is growing sustainably at low double-digit rates. Compare this to the estimated low

4

single digit internal growth rate at Hain for the last ten years. We believe that WhiteWave, not Hain, should trade at a premium price to reflect the ongoing boom in healthy and organic foods.

During the last 21 months, Hain CEO Irwin Simon took advantage of a temporary boost in Hain's share price to **dump $33 million of stock**. Worse still, Simon sold his stock in eleven tranches, **all of which occurred within hours to 28 trading days after Simon appeared on CNBC to tout the growth prospects of his Company**. We believe investors would be wise to heed his actions and ignore what Simon says.

## I.   CELESTIAL SEASONINGS: THE SINKING FLAGSHIP

Management's hyper-promotional disposition, insider selling and history of FDA warnings made us skeptical of the Company's claims regarding the health qualities of its products. To verify whether Hain's consumer products could justify the healthy image cultivated by management, we **purchased a sampling of Celestial Seasonings teas** from online retailers and had them shipped directly to Eurofins, an ISO/IEC 17025 accredited and independent laboratory, for testing.

### 1.   Healthy Tea?

Celestial Seasonings tea is perhaps Hain's most recognizable brand, accounting for 8% of the Company's consolidated net sales in 2012 and an even higher percentage of net income.[1] Our families have purchased Celestial teas for years. Like many consumers, we were enticed by the label that advertises all of Celestial teas as '100% natural'[2] and touts the health benefits of each product on the label.



Celestial Seasonings' marketing strategy is best exemplified by the Company's website. The following paragraph, taken directly from the <u>website</u>, uses the words 'wellness', 'natural' or 'healthy' **seven times in just three sentences**.

## Wellness Teas

Celestial Seasonings was founded in 1969 with the belief that all natural teas can foster everyday wellness as part of a balanced, healthy lifestyle. True to this original vision, we offer our delicious, handcrafted Wellness Teas. Whether you want to boost your immune system function with our echinacea tea, Sleepytime® Echinacea Complete Care®, detox your diet with Detox A.M.®, or benefit from the extra flavonoids and added Vitamin C in our Antioxidant Max™ Green Teas, our wellness teas are a great way to naturally support your body's defenses and maintain a healthy balance every day.*

---

[1] JP Morgan Research Report, December 12, 2006 "tea segment is HAIN's most profitable (highest gross margin)."

[2] Although companies are legally allowed to market food or beverages as 'natural' even though such products may contain pesticides, we believe that this is not well understood by consumers who purchase Celestial Seasonings brand based on the perception that its teas are 'healthy'.

5

In one of his many television appearances, Hain CEO, Irwin Simon, touted his Company's products as a healthy alternative to the growing problem of pesticide use:

> Simon Says: *"Eating healthy is not a fad.  One of the best preventions of cancer is preventing obesity and we keep reading about ingredients - **pesticides**, parabens... "*

- Irwin Simon CNBC 5/7/2012

We tested eleven Celestial Seasonings teas from the brand's most popular categories (green tea, wellness tea, sleepy time/kids tea and k-cup).  Results showed that many of the teas contained so many pesticides that they violated US regulatory standards.  It is important to note that at no time did we take custody of, touch or handle any of the tea samples.  Rather, we had the products shipped directly to Eurofins from the Company's website and other online retailers.  We selected Eurofins because it is an ISO/IEC 17025 accredited and independent laboratory, and it is the world leader in food, pharmacological and environmental testing.

We would also like to encourage regulators and investors with a significant stake (either long or short) in Hain to test the Celestial Seasonings teas.  Such tests cost a few thousand dollars and can be completed in as little as forty-eight hours.  We have included copies of the lab reports in Appendix I.

2. *Teas Violate FDA and EPA Pesticide Standards*

Independent lab tests of Celestial Seasonings teas undermine the healthy image cultivated by Hain's management.

By law, the EPA is responsible for establishing 'tolerances' (i.e. maximum safe limits) for each pesticide based on the potential risk to human health posed by the chemical.  The FDA enforces such tolerances to ensure that the nation's food supply is maintained safely at all times.  Under Section 402, Title 342(a)(2)(B) and Section 406, Title 346(a)(1) of the FDCA, a processed food is considered to be 'adulterated' and subject to FDA enforcement action if it contains pesticide residue for which there is no tolerance, tolerance exemption, or food additive regulation.

91% of the Celestial Seasonings teas tested contained residues of pesticides either in amounts exceeding federally prescribed tolerance levels or for which no regulatory limit has been established under federal law, meaning that such samples violated EPA pesticide regulation 40 CFR 180.

6

THE HAIN CELESTIAL GROUP, INC. | NASDAQ: HAIN          www.hainceslestial.com



**Number of Adulterants Detected**

Legend:
- Green Tea Peach Blossom
- Green Tea Rasp Gardens
- Authentic Green Tea
- Antioxidant Max Dragon Fruit
- Green Tea Honey Lem Gin
- Antioxidant Max Blckbry Pom
- Antioxidant Max Blood Orange
- Sleepytime Kids Gdnt Grape
- Sleepytime Herb Teas
- Eng Bkfst Black K-Cup
- Rooibos Safari Spice

The Celestial Seasonings samples we tested contained an average of 6.5 adulterants, as detailed in the following table.

| Celestial Seasonings Tea Sample | Buprofezin | Carbendazim | Chlorpyrifos-ethyl | Chlorfenapyr | Cyhalothrin lambda | Cypermethrin | p,p'-DDT | Diazinon | Dimethachlor | Dimethoate | Endosulfan (Sum) | Fludioxonil | Fipronil | Hexaflumuron | Imidacloprid | Malathion | Profenofos | Permethrin | Pyridaben | Propachlor | Thiamethoxam | Thiacloprid | Triazophos | Detected U.S. Adulterants |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Eng Bkfst Black K-Cup | | | | | * | * | | | | * | | | | | * | | | | | | * | | | 5 |
| Authentic Green Tea | * | | * | * | * | | | | | | * | | * | * | | | * | | | | | | | 8 |
| Green Tea Honey Lem Gin | * | | * | * | * | | | | | | | | * | * | | | * | | | | | | | 7 |
| Green Tea Peach Blossom | * | | * | * | * | | | | | | * | * | * | | | | * | | | | | * | | 9 |
| Green Tea Rasp Gardens | * | | * | * | * | | | | | | | | * | | | | * | | | | * | * | * | 9 |
| Rooibos Safari Spice | | | | | | | | | | | | | | | | | | | | | | | | 0 |
| Sleepytime Herb Teas | | * | | | | | | * | | * | | | | | | * | * | | | | | | | 5 |
| Sleepytime Kids Gdnt Grape | | * | * | | | | | * | | * | | | | | | * | * | | * | | | | | 7 |
| Antioxidant Max Blckbry Pom | * | | * | * | * | | | | | | * | | * | | | | * | | | | | | | 7 |
| Antioxidant Max Blood Orange | * | | * | * | * | | | | | | | | * | | | | * | | | | | * | | 7 |
| Antioxidant Max Dragon Fruit | * | | * | * | * | | | | | | | | * | | | | * | | | | * | * | | 8 |
| | | | | | | | | | | | | | | | | | | | | | **Total** | | | **72** |
| | | | | | | | | | | | | | | | | | | | | | **Average Violations per Sample** | | | **6.5** |

* violation of U.S. 40 CFR 180; pesticide residue detected for which there is no established EPA tolerance level or for which such tolerance level was exceeded.

7

THE HAIN CELESTIAL GROUP, INC. | NASDAQ: HAIN                    WWW.hains.celestial.com

The consequences of violating EPA pesticide regulations are potentially devastating to the Celestial Seasonings brand as federal regulators may seize or recall the offending products.  At the very least, Celestial Seasonings may **initiate a voluntary recall of the teas that violate US law in order to avoid regulatory fines and consumer lawsuits.**

Further undermining the healthy brand image carefully cultivated by Celestial Seasonings, many of the teas we tested showed traces of pesticides classified by state and federal regulators as 'known' or 'possible' human carcinogens.[3]   We are not making any claims about the health effects of the pesticide residues in Celestial Seasonings' tea; merely that for a company leveraging its sales off of a brand it characterizes as natural and healthy, the presence of possible and known carcinogens could be significantly damaging to sales.

We have listed the results in the following chart. Note that these teas are marketed as healthy products.

| Tea Sample Description | | Independent Testing Results - Pesticides | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | U.S. Adulterants Detected | Appears to Violate | | PAN Class[2] | | Human Carcinogen Class[3] | | | |
| Product Name | Hain Tea Category | | U.S. Regs[1] | Calif Prop 65 | Toxic | Bad Actor | Known | Likely | Possible | Suggestive Evidence of |
| Eng Bkfst Black K-Cup | Black | 5 | Yes | Yes | 3 | 1 | 1 | 1 | 1 | - |
| Authentic Green Tea | Green | 8 | Yes | | 6 | 2 | - | 1 | 1 | 2 |
| Green Tea Honey Lem Gin | Green | 7 | Yes | | 5 | - | - | - | 1 | 2 |
| Green Tea Peach Blossom | Green | 9 | Yes | Yes | 7 | 1 | 1 | - | 2 | 2 |
| Green Tea Rasp Gardens | Green | 9 | Yes | Yes | 7 | 2 | 1 | 1 | 1 | 2 |
| Sleepytime Herb Teas (Flagship) | Herbal | 5 | Yes | | 5 | 4 | - | - | 2 | 1 |
| Sleepytime Kids Gdnt Grape | Herbal | 7 | Yes | Yes | 7 | 6 | 1 | - | 2 | 1 |
| Rooibos Safari Spice | Rooibos | - | | | - | - | - | - | - | - |
| Antioxidant Max Blckbry Pom | Wellness | 7 | Yes | Yes | 5 | - | 1 | - | 1 | 2 |
| Antioxidant Max Blood Orange | Wellness | 7 | Yes | Yes | 5 | 1 | 1 | - | 1 | 2 |
| Antioxidant Max Dragon Fruit | Wellness | 8 | Yes | Yes | 6 | 2 | 1 | 1 | 1 | 2 |

[1] Title 40 Code of Federal Regs ("CFR"), sect 180 (Tolerances and Exemptions for Pesticide Chemical Residues in Food).
[2] Pesticide Action Network ("PAN") database www.pesticideinfo.org.
[3] Sources include U.S. EPA Office of Pesticide Programs "Chemicals Evaluated for Carcinogenic Potential", Pesticide Action Network database, and Calif Proposition 65 http://oehha.ca.gov/prop65/prop65_list/files/P65single010413.pdf.

---

[3] A carcinogen is any substance, radionuclide or radiation that is an agent directly involved in causing cancer.

THE HAIN CELESTIAL GROUP INC. | NASDAQ: HAIN | www.hainresearch.com

### 3. *Traces of Known Carcinogen in Kids Tea*

Most notably, our tests showed that samples of Celestial Seasonings' **Sleepy Time Kids Goodnight Grape Tea contained 0.26 ppm of Propachlor, a known carcinogen.**



*Simon Says: "When you look at Sleepytime, it's the #1 SKU within Celestial. We introduced Sleepytime for Kids - and I have 4 kids - and they have trouble sleeping at night."*

- Irwin Simon on CNBC 5/27/2012

Propachlor is listed in the Pesticide Action Database as a "bad actor" chemical, a carcinogen, and a developmental or reproductive toxin.

## Toxicity Information for Propachlor

### Summary Toxicity Information

| PAN Bad Actor Chemical [1] | Carcinogen | Developmental or Reproductive Toxin |
|:---:|:---:|:---:|
|  |  |  |

 Indicates high toxicity in the given toxicological category.

Source: PAN Database.
Note: information for many chemicals is incomplete and may not be fully representative of effects on humans.

To put it in perspective, the amount of Propachlor detected in the tested sample of Sleepy Time Kids Goodnight Grape Tea was 420% higher than the limit prescribed by the EU for dried teas.

9

THE HAIN CELESTIAL GROUP, INC. (NASDAQ: HAIN)                    www.glaucusresearch.com

## EU Pesticides database

| Code number | Groups and examples of individual products to which the MRLs apply (a) | Propachlor: oxalinic derivate of propachlor, expressed as propachlor |
|---|---|---|
| 0610000 | (i) Tea (dried leaves and stalks, fermented or otherwise of Camellia sinensis) | 0,05* |

Products in **bold** & *italic* changes introduced by Reg. (EU) No.600/2010 · Pesticide residues and maximum residue levels (mg/kg)

Source: EU Pesticides database.

We also believe that the children's tea sample violates California's pesticide regulations, meaning that Hain may have to recall the product rather than risk regulatory censure or lawsuits from plaintiffs' attorneys.

In 1986, California voters approved an initiative to address their growing concerns about exposure to toxic chemicals. That initiative became the Safe Drinking Water and Toxic Enforcement Act of 1986, better known by its original name of Proposition 65. Proposition 65 requires the State of California to publish a list of chemicals known to cause cancer or birth defects or other reproductive harm. Businesses are required to put warning labels on products that contain listed chemicals in amounts exceeding the prescribed safe harbor limits.

According to the Proposition 65 list published by the State of California's Office of Environmental Health Hazard Assessment, there is **no safe harbor limit for Propachlor**, the chemical found in tested samples of Celestial Seasonings' **Sleepy Time Kids Goodnight Grape Tea**. We believe that it is therefore illegal for the Company to sell such tea in California without one or both of the following explicit warning labels:

**"WARNING: This product contains a chemical known to the State of California to cause cancer"**

OR

**"WARNING: This product contains a chemical known to the State of California to cause birth defects or other reproductive harm."[4]**

CHEMICALS KNOWN TO THE STATE TO CAUSE CANCER OR REPRODUCTIVE TOXICITY
4-Jan-13

| Chemical | Type of Toxicity | Listing Mechanism | CAS No. | Date Listed | NSRL or MADL (µg/day)[a] |
|---|---|---|---|---|---|
| Propachlor | cancer | AB | 1918-16-7 | 27-Feb-01 | |

Source: California Proposition 65 list.

Unlike many environment statutes, Proposition 65 provides for private enforcement. Therefore, if the California State Attorney General or local authority takes no action after 60 days' notice, private citizens (i.e., plaintiffs' lawyers) may file suit to enforce the Proposition. Predictably, a cottage industry has

---

[4] California Code of Regulations § 25603.2.

THE HAIN CELESTIAL GROUP, INC. [NASDAQ:HAIN]                    www.hain.celestial.com

grown up around Proposition 65 lawsuits, which plaintiffs' lawyers frequently combine with claims under the California Unfair Competition Law. Firms sued under Proposition 65 are subject to the $2,500 a day penalty for Proposition 65 violations as well as monetary damages and attorneys' fees.

Independent testing of a sample of Celestial Seasonings' Sleepy Time Kids Goodnight Grape Tea detected traces of Propachalor, for which no safe harbor limit exists. In our view, the Company is therefore stuck between a rock and a hard place. The failure to include a product warning exposes the Company to significant litigation risk, while including the warnings may do an equal or greater amount of harm to the brand.

   4.   *Potential Proposition 65 Violations in Wellness Tea*

Independent testing also detected traces of Propargite in six other Celestial Seasonings samples, including 100% of the teas we tested from the Wellness Tea category. According to the Proposition 65 list published by State of California, there is **no safe harbor limit for Propargite**, which is classified in the database as a known carcinogen and developmental toxin.

### CHEMICALS KNOWN TO THE STATE TO CAUSE CANCER OR REPRODUCTIVE TOXICITY
4-Jan-13

| Chemical | Type of Toxicity | Listing Mechanism | CAS No. | Date Listed | NSRL or MADL (µg/day)ᵃ |
|---|---|---|---|---|---|
| Propargite | cancer | AB | 2312-35-8 | 1-Oct-94 | |
| Propargite | developmental | AB | 2312-35-8 | 15-Jun-99 | |

Source: California Proposition 65 list.

The following tea samples contained traces of Propargite, which we believe renders such teas illegal to sell in California under Proposition 65 without one or both of the explicit warning levels we mentioned above.

**Further Proposition 65 Violations?**

| Celestial Seasonings Sample | Tea Category | ppm Propargite |
|---|---|---|
| Eng Bkfst Black K-Cup | Black | 0.07 |
| Green Tea Peach Blossom | Green | 0.06 |
| Green Tea Rasp Gardens | Green | 0.05 |
| Antioxidant Max Blckbry Pom | Wellness | 0.07 |
| Antioxidant Max Blood Orange | Wellness | 0.08 |
| Antioxidant Max Dragon Fruit | Wellness | 0.06 |

Source: Eurofins test results.

*Simon Says "There are so many sicknesses out there today - it's coming from the foods that we're eating"*

-Irwin Simon (CNBC Fast Money 10/4/2012)

   5.   *FDA Warnings Echo Lab Findings*

Our findings do not come as a surprise given that the FDA has issued two warning letters to Celestial Seasonings for quality control issues. An FDA warning letter **is a notification that the FDA considers one or more "products, practices, processes, or other activities to be in violation of the FDCA..."**[5]

---
[5] http://www.fda.gov/downloads/ICECI/ComplianceManuals/RegulatoryProceduresManual/UCM176965.pdf

11

The FDA states explicitly that "warning letters should only be issued **for violations of regulatory significance.**"

The FDA sent a warning letter to Hain in December 2010 regarding manufacturing at its Celestial Seasonings factory in Boulder, Colorado.   Specifically, the FDA found inadequate quality control measures at its food processing facility and that the Company was not keeping proper records for maintenance, cleaning and sanitation of equipment.

The FDA also sent a warning letter to Hain on August 17, 2007 threatening the Company with regards to the use of the sweetener stevia in Celestial Seasonings tea.  Specifically, the FDA warned Hain that there was not sufficient evidence showing stevia was safe for use in food products and that "literature reports have raised safety concerns about the use of stevia, including concerns about control of blood sugar and the effects of reproductive, cardiovascular and renal systems."

Celestial Seasonings' FDA warning letters echo our findings that almost all of the tea samples we tested violate federal regulations.   In our opinion, an audit of some of Hain's prominent consumer products shows a pattern of quality control issues and questionable labeling practices which indicate that the Company is not only significantly overvalued, but that it faces significant risk of civil and regulatory liability.

At the very least, we expect that when consumers learn the truth about Celestial Seasonings products, they will quickly migrate to readily available substitutes.  Declining or even sluggish sales from Hain's most recognizable brand would be devastating to the growth story management is selling to investors.

THE HAIN CELESTIAL GROUP, INC. — NASDAQ: HAIN                    www.absaroresearch.com

## II.    NECTAR OF THE GODS?

Greek Gods Yogurt, which we estimate accounted for around 37% of Hain's 2012 internal revenue growth, is marketed as a traditional style Greek yogurt.  We believe that this product is yet another example of the Company's habit of deceptively marketing products to consumers.  Recent sales trends suggest that brand equity is rapidly eroding, as consumers learn that Greek Gods is not really Greek yogurt.

### Greek Gods' "Authentic" and "Traditional" Claims



**The Concept**
Deliver ▓▓▓▓▓▓ Greek-style products that embody those flavors found on a Greek dining table.

**The Story**
Founded in Seattle, WA in 2003 a group of friends (3 Greek Gods) not new to the industry founded and launched The Greek Gods line of quality ▓▓▓▓▓▓ Greek-style products.

Recently, Greek-style yogurts have skyrocketed in popularity because of their perceived health benefits; they are repeatedly strained to yield 12-15 grams of protein per 150 gram serving while whittling fat down to 0-3 grams per serving.  The straining process also gives Greek yogurt its trademark thickness.

Hain promotes Greek Gods Yogurt as an 'authentic' Greek-style yogurt.  A closer look at the nutrition label and ingredients suggests that Greek Gods Yogurt is Greek only in name.  Greek Gods contains around **two-thirds less protein than authentic Greek style yogurts and 400% more fat**.

| Greek Yogurt Protein Content - Regular/Lowfat | | | | | *(in grams)* | |
|---|---|---|---|---|---|---|
| | | **As Labeled** | | | **Per 150 grams** | |
| **Brand** | **Item** | **Size** | **Fat** | **Protein** | **Fat** | **Protein** |
| *Competition* | | | | | | |
| 365 Greek | Plain 2% | 225 | 5 | 21 | 3 | 14 |
| Wallaby Org Greek | Lowfat Plain | 170 | 3 | 17 | 2 | 15 |
| Fage | Plain 2% | 200 | 4 | 20 | 3 | 15 |
| Stoneyfield Oikos | Plain 1.5% | 150 | 3 | 13 | 3 | 13 |
| Chobani | Lowfat Plain | 170 | 4 | 17 | 3 | 15 |
| | | | | **Average - Comps** | 3 | 14 |
| **Greek Gods** | **Plain** | 113 | 11 | 4 | 15 | 5 |
| | | | | **Difference** | 417% | (63%) |

THE HAIN CELESTIAL GROUP, INC.   NASDAQ: HAIN                        www.hainceslesgnui.com

Greek Gods' zero/low fat yogurt also appears to be an imposter, as it contains 66% less protein than authentic zero/low fat Greek style yogurts.

| Greek Yogurt Protein Content - Zero/Nonfat Category | | | | | | *(in grams)* |
| --- | --- | --- | --- | --- | --- | --- |
| | | As Labeled | | | Per 150 grams | |
| **Brand** | **Item** | **Size** | **Fat** | **Protein** | **Fat** | **Protein** |
| *Competition* | | | | | | |
| 365 Greek | Plain 0% | 170 | 0 | 18 | 0 | 16 |
| Wallaby Org Greek | Plain nonfat | 170 | 0 | 17 | 0 | 15 |
| Fage | Plain 0% | 170 | 0 | 18 | 0 | 16 |
| Stoneyfield Oikos | Plain | 150 | 0 | 15 | 0 | 15 |
| Chobani | Plain nonfat | 170 | 0 | 18 | 0 | 16 |
| | | | | **Average - Comps** | | **16** |
| **Greek Gods** | **Plain Nonfat** | **170** | **0** | **6** | **0** | **5** |
| | | | | **Difference** | | **(66%)** |

**Hain's Greek Gods yogurt is high in fat and low in protein.  Authentic Greek-style is low in fat and high in protein.**  The problems do not end there.

The third ingredient in Greek Gods yogurt, Pectin, is notably absent from its higher quality competitors.[6] Pectin is a thickening agent that we believe Greek Gods uses to artificially achieve the thick consistency of more authentic Greek-style yogurts.



INGREDIENTS:
Pasteurized Grade A Milk, Cream, Pectin and Active Cultures (S.Thermophilus, L.Bulgaricus, L.Acidophilus, Bifidobacterium, L.Casei).
based on a 2,000 calorie (
Greek Gods Plain

The plain yogurt (non-fruit) component of the market leading comps does not have Pectin as an ingredient.

Ingredients

Cultured Pasteurized Nonfat Milk, Cream, Live And Active Cultures: S. Thermophilus, L. Bulgaricus, L. Acidophilus, Bifidus And L. Casei.          Chobani low-fat plain

---

[6] While pectin is typically included as an ingredient in the fruit component of a yogurt, most authentic Greek style yogurts do not include pectin as a thickening agent in the yogurt itself.  *See http://www.befoodsmart.com/blog/the-best-and-worst-greek-style-yogurts-for-your-health/*

THE HAIN CELESTIAL GROUP, INC. (NASDAQ: HAIN)                          www.glaucusresearch.com

**Ingredients:**

Grade A Pasteurized Skimmed Milk and Cream, Live Active Yogurt Cultures
(L. Bulgaricus, S. Thermophilus, L. Acidophilus, Bifidus, L. Casei).

Fage Total 2% plain

## Our Family Recipe

CULTURED PASTEURIZED ORGANIC LOW FAT MILK
CULTURES: *S. THERMOPHILUS, L. BULGARICUS, L. ACIDOPHILUS, BIFIDUS
AND L. CASEI*

Oikos Greek Plain 1.5%

## Ingredients

STRAINED YOGURT: Organic Cultured Pasteurized Lowfat Milk

### Live Active Cultures

L. acidophilus, L. bulgaricus, S. thermophilus, bifidus.

Wallaby Greek Lowfat Plain

Investors should be wary. Consumers recently sued General Mills for fraud and deceptive labeling for marketing Greek yogurt that used an artificial thickening agent (milk protein concentrate) rather than employing a traditional straining technique. Plaintiffs cried foul, saying that the product was neither Greek yogurt nor yogurt. In December 2012, the presiding judge dismissed the suit without prejudice and referred the controversy to the FDA.

We believe that Hain is at risk of incurring a similar lawsuit for its use of pectin in Greek Gods yogurt. It is only a matter of time before class-action attorneys and consumers notice that Greek Gods does not have the nutritional profile of an authentic Greek-style yogurt.

Nielson data shows that Greek Gods sales growth has plummeted to 25% at the end of calendar 2012 versus 80% only twelve months prior. We expect this rapid deceleration to continue in fiscal 2013 as consumers wise up.

THE HAIN CELESTIAL GROUP, INC. (NASDAQ: HAIN)                                www.haincustresearch.com

### III.   VEGGIE TALES

Sensible Portions is Hain's other star product line responsible for an estimated 40% of the Company's 2012 internal revenue growth.  The Company labels its products as **"Garden Vegetable Chips"**, "Garden Veggie Straws", and "Apple Straws" which are "better for you" and part of a "healthier diet."  As the Company's lawyerly website explains, "The key to a healthy diet is moderation... if you eat less, you consume fewer calories."

The Sensible Portions marketing strategy seems designed to pitch "Veggie" Straws and "Apple" Straws as a substitute for fruits and vegetables and the nutritional benefits they provide.

<u>"Veggie" Straws</u>                                    <u>"Apple" Straws</u>

*A sensible solution to eating your vegetables?*

However, these products contain little of the nutritional value of the fruits and vegetables they ostensibly replace.  One would think that a product line marketed as "better for you" would include ingredients and nutritional content on their website - but not Sensible Portions.  We believe that the Company is reluctant to flaunt the nutritional content of the veggie straws because the primary ingredients are a far cry from healthy and nutritious fruits or vegetables.[7]

**Garden Veggie Chips Ingredients**                    **Apple Straws Ingredients**

Ingredients: Veggie Chips (Potato Flour, Potato Starch, Tomato Paste, Spinach Powder, Salt, Sugar, Beetroot Powder [Color], Palm Oil, Turmeric), Canola Oil and/or Safflower Oil and/or Sunflower Oil, Sea Salt.
MANUFACTURED IN A FACILITY THAT PROCESSES WHEAT, SOY AND MILK.

Manufactured for Distribution By:
The Hain Celestial Group, Inc.

Ingredients: Multigrain Straws (Corn Flour, Rice Flour, Whole Wheat Flour, Whole Oat Flour, Sugar, Whole Barley Flour, Potato Fiber, Apple Purée, Salt, Natural Apple Flavoring), Canola Oil and/or Safflower Oil and/or Sunflower Oil, Sugar, Cinnamon, Malic Acid, Natural Flavors.
CONTAINS WHEAT.
MANUFACTURED IN A FACILITY THAT PROCESSES SOY AND MILK.

Manufactured for Distribution By:
The Hain Celestial G...

---

[7] We realize that potatoes are technically vegetables, but your yoga instructor would not see it that way.  Hain appears to be pitching its products as a substitute for apples, spinach and tomatoes, not as a substitute for potatoes and other starches.

Leading ingredients of Sensible Portions products include processed flour, starch, sugar, salt, and oil, with minimal vegetable/fruit content as evidenced by the lack of vitamins. Spinach is a top source of vitamin A. Yet, "Garden Veggie" Chips provide 0% of the recommended daily intake of vitamin A despite also having "spinach powder" as an ingredient. Although apples are a good source of vitamin C, "Apple" Straws are "not a significant source of vitamin C."

| Vitamin A 0% | ● | Vitamin C 2% | | Not a significant source of Vitamin A, |
| Calcium 0% | ● | Iron 2% | | Vitamin C, Calcium and Iron. |

-Veggie Chips not a source of Vitamin A.     - Apple Straws not a source of Vitamin C.

*Simon Says: "The consumer is educated, reads labels, and really looking for ingredients"*

-Irwin Simon, CNBC Fast Money (10/4/2012)

In addition to rising consumer awareness about the true nutritional value of Sensible Portions products, Veggie Straws are vulnerable to competition. During our visit to Whole Foods, the store appeared to only carry the 365 brand of veggie straws and chips. The ingredients looked virtually identical to those of Sensible Portions and they were advertised for a fraction of the price of Hain's product.



With questionable health benefits and so many competitors entering the market, it is no wonder growth has sharply decelerated (See Section VIII of this report).

17

THE HAIN CELESTIAL GROUP, INC. (NASDAQ: HAIN)                    www.haincelestial.com

## IV.    ORGANIC PASTA SAMPLES CONTAINED PESTICIDES

Independent lab tests also reveal that samples of one of Hain's most lucrative organic brands, DeBoles pasta, contained evidence of conventional pesticide use.

The DeBoles website states that its two leading brands, Organic Artichoke Flour Pasta and Organic Whole Wheat Flour Pasta, are USDA certified organic, which are grown **without the use of potentially harmful herbicides or** <u>pesticides</u>.

*The Organic Difference*

DeBoles is dedicated to both your health and the health of the environment. That is why we offer <u>organic products</u> grown in nutrient-rich soil <del>without the use of potentially harmful herbicides, pesticides</del> or fertilizers. When proudly displaying the USDA seal, DeBoles products are made with at least 95% organic ingredients, so you can be sure that your family not only has healthy food to grow up on, but a cleaner, safer world to grow up in.

Yet lab tests detected that multiple samples of Deboles 'certified USDA organic' pasta contained trace amounts of chemicals associated with conventional pesticide use, including **MGK-264 and piperonyl butoxide (PBO)**, both of which are classified by the EPA as Group C Possible Human Carcinogens.

We do not know if such trace amounts are sufficient to strip DeBoles pasta of its organic label, as such decisions are left to Qualified Assurance International, DeBoles' organic certifier.  However, we do believe that even small amounts of pesticides may deter customers from paying a premium price for DeBoles pasta.

DeBoles organic pasta is among the priciest pasta on the shelf.  It's even more expensive than other certified organic brands.  We believe that consumers **pay the 2-3x premium price because they believe the product is pesticide-free.**

### Deboles Premium - Spaghetti

| Brand | Price/oz | Label | Deboles Premium |
|---|---|---|---|
| Deboles | 0.31 | Organic | |
| Bionaturae | 0.17 | Organic | 82% |
| Ronzini | 0.15 | Generic | 107% |
| De Cecco | 0.15 | Generic | 107% |
| Barilla | 0.11 | Generic | 182% |

Source: Amazon.com January 2013.

We are not surprised that pesticides crept into certified organic pasta because like Celestial Seasonings, DeBoles has struggled with quality control problems in the past.  In July 2010, Hain <u>recalled</u> DeBoles Kids Only! Gluten Free Corn Pasta because it contained whole wheat mixed with the gluten-free pasta,

18

THE HAWKCELESTIAL GROUP, INC. ― A SELL OPINION www.jalaitakasearch.com

with the gluten-free pasta, thus presenting a danger to children with gluten allergies. In August 2012, DeBoles recalled **seven gluten free pastas due to the presence of undeclared wheat** in the products.

Evidence of conventional pesticide use in organic pasta ingredients can only further hurt Hain's credibility, and with cheaper organic pasta substitutes so readily available, we expect to see significant brand erosion.

## V. DECEPTIVELY LABELLED PERSONAL CARE PRODUCTS?

In May 2011, consumers filed a federal class action lawsuit against Hain for deceptively labeling its Jason and Avalon Organics cosmetic products as 'organic' when such products are largely comprised of non-organic ingredients.

Plaintiffs alleged that Hain knowingly deceived consumers into paying a premium price for cosmetics by prominently placing an 'organic' label on the top of its products even though most of the ingredients were not organic. In one striking example, plaintiffs pointed out that in the Jason Ester-C Super-C Cleanser Gentle Face Wash, which the Company had labeled as organic, **only one of the nineteen ingredients listed on the back of the label was certified organic.**

Hain's legal defense of the lawsuit is insulting to customers. In a motion to dismiss the class action, the Company's **attorneys claimed that including the word 'organic' on the front of the product does not refer to the product or the ingredients**, and that any reasonable customer would understand that its products are not organic by looking at the ingredient list. We find this laughable. The whole purpose of labeling a product as 'organic' front and center is to convince customers that a product is organic.

Although the case is still pending, we believe that the lawsuit presents another data point for investors to consider in which Hain has deceptively labeled a consumer product to appear healthier than it actually is. We believe that such disreputable practices, coupled with the Company's quality control issues, will soon catch up with Hain.

## VI. SPECTRUM ORGANICS – MORE FDA PROBLEMS

In 2010 the FDA warned Hain over deceptive labeling with regards to its Spectrum Organic All Vegetable Shortening.

The FDA alleged that Hain's label misrepresented that the product was "cholesterol free" and "naturally cholesterol free" when it was not. The FDA also chastised the Company for stating on the vegetable shortening label that it contained "less saturated fat than butter" when there was no basis to make such a claim. The FDA concluded that the claims "good source of … monosaturated fat" and "0 grams trans fat" were also made without a proper foundation.

Such accusations have a familiar ring to them. In our opinion, Hain has deceptively labeled a variety of products, making it no surprise that the Company has incurred three FDA warning letters since 2007 for quality control issues and/or consumer misrepresentations.

THE HAIN CELESTIAL GROUP, INC.    NASDAQ: HAIN                     www.glaucusresearch.com

### VII.    ACQUISITIONS CONCEAL ANEMIC GROWTH

Analysts point to Hain's double-digit growth over the last decade as evidence that the Company deserves a higher trading multiple.  Such high p/e multiples are typically reserved for business with growth rates of 10% or more per year.  But if we **exclude the first year sales impact of acquisitions and dispositions**, we estimate that Hain's core business grew internally by an anemic 3.2% per year, from 2001 to 2011, a dismal performance record when compared to its organic/natural food peers.



*Sources: Nutrition Business Journal; for Hain data, refer to the Glaucus estimates and footnotes on the following page.*

The table below, which will not be found in any management presentation or sell-side research report, unmasks Hain's internal growth rate for the years 2001 through 2011.  As we can see on the far right column, the average internal growth rate for this period was 3.2% per annum.

THE HAIN CELESTIAL GROUP, INC    NASDAQ: HAIN                              www.prauinosresearch.com

**Hain Estimated Internal Sales Growth**                                                   *($ in mms)*

| | Reported Sales | Less: Acquired Sales | | | | | | Plus: Disposals | Adj Base | Internal Growth |
|---|---|---|---|---|---|---|---|---|---|---|
| **Year Ended June 30** | | | | | | | | | | |
| 2000 | $332 [e] | | | | | | | | | |
| 2001 | 346 | (3) [A] | (4) [B] | | | | | | 339 | 2.1% |
| 2002 | 396 | (32) [A] | (6) [B] | (13) [C] | | | | | 345 | (0.4%) |
| 2003 | 466 | (41) [D] | 0 [E] | (1) [F] | (7) [C] | | | | 418 | 5.5% |
| 2004 | 544 | (29) [D] | (2) [E] | (19) [F] | (2) [G] | (3) [H] | | | 490 | 5.0% |
| 2005 | 620 | (2) [I] | | (18) [G] | (28) [H] | | | | 572 | 5.2% |
| 2006 | 739 | (6) [I] | (29) [J] | (5) [K] | (9) [L] | (2) [M] | (31) [N] | | 657 | 5.9% |
| 2007 | 900 | (20) [Q] | (21) [J] | (15) [K] | (46) [L] | (48) [M] | (1) [U] | (12) [O] | 15 [P] | 753 | 1.9% |
| 2008 | 1,056 | (20) [Q] | (6) [R] | (13) [S] | (56) [T] | (8) [U] | (8) [O] | | 944 | 4.9% |
| 2009 | 1,135 | | (18) [R] | (27) [S] | (11) [T] | | | | 1,079 | 2.2% |
| 2010 | 917 | (4) [V] | (0) [W] | | | | | 166 [a] | 1,079 | (4.9%) |
| 2011 | 1,130 | (89) [V] | (5) [W] | (30) [X] | (8) [Y] | (1) [Z] | | | 997 | 8.7% |
| 2012 | 1,378 | (3) [b] | (8) [c] | (144) [d] | (12) [Y] | (1) [Z] | | | 1,210 | 7.1% |

Refer to Appendix II for footnotes.        **Compounded Average Growth 2000-2011** **3.2%**

The table above, while admittedly complex, is critical. To calculate internal growth, we first calculate an adjusted sales base by taking reported sales for the fiscal year and subtracting any sales attributable to an acquisition in the twelve months after it was acquired. Most such acquired sales cover two fiscal years as they are completed mid-year. Internal growth is then calculated by taking the adjusted sales base divided by the previous year's reported sales minus one. Supporting data for these calculations can be found in **Appendix II**. The critical takeaway is that acquisitions have masked anemic growth from 2001 to 2011. Strip away the gimmickry and Hain appears to have grown at a paltry 3.2%, indicating that the Company is undeserving of the p/e multiple at which it currently trades.

Hain appears to have performed in-line with the organic and natural food category in just one year (2012) with an internal growth rate of 7.1%. Yet even this rate is unsustainable as an estimated 84% of the growth is attributable to Greek Gods Yogurt, Sensible Portions, and Celestial Seasonings. As discussed above, we believe that such brands are beset by quality control and/or deceptive labeling issues, which we expect will only drive consumers to readily available substitutes. The **remaining products appear to have grown only 1.2%**.

THE HAIN CELESTIAL GROUP, INC. | GANDA (HAIN)                    www.gandoresearch.com



**Hain's Estimated Internal Growth - FY2012 ($ in mms)**

*Note: FY2012 contains an estimated $168mm of first twelve months sales impact from acquisitions (Daniel's $144mm, Danival $12mm, Europe's Best $8mm, GG Unique Fiber $1mm, and Cully & Sully $3mm).*

Hain not only masks its anemic internal growth rate through acquisitions, but also by using the accounting gimmick of retroactively stuffing losses from failed products into 'discontinued operations.'

For example, in Hain's 2011 10-K, it reported sales of $1,130 million. Yet by 2012, this 2011 reported sales base had mysteriously declined in the 2012 10-K to $1,108 million, a difference of $22 million.

**2011 Reported Sales in 2012 10-K**

|  | Fiscal Year ended June 30, | | |
|---|---|---|---|
|  | 2012 | 2011 | 2010 |
| Net sales | $ 1,378,247 | $ 1,108,546 | $ 890,007 |

**2011 Reported Sales in 2011 10-K (a $22 million Difference)**

|  | Year Ended June 30 | | |
|---|---|---|---|
|  | 2011 | 2010 | 2009 |
| Net sales | $ 1,130,257 | $ 917,337 | $ 1,122,734 |

It turns out the $22 million of sales axed from the 2011 sales figure was attributable to private-label chilled meals and sandwich operations in the United Kingdom, a product line with an operating loss of $4.5 million.

THE HAIN CELESTIAL GROUP, INC. (NASDAQ: HAIN)                    www.glaucusresearch.com

### 2011 Discontinued Operations - 2012 10-K

Summarized results of our discontinued operations are as follows:

|  | 2011 |
| --- | --- |
| Net sales | $ 21,711 |
| Impairment charges | $ — |
| Operating loss | $ (4,437) |

Hain retroactively discontinued sales of such products in 2012 and removed their sales from the 2011 and 2012 income statement.  By doing so, the Company lowered the sales base for the prior year, artificially inflating its 2012 growth rate.

Put simply, this is an accounting gimmick whereby the Company keeps the credit for a product's successes in 2011 (internal sales growth) yet gets to exclude the same product's failures (operating losses and sales declines) from being counted in 2012.  Although this practice is technically permitted, we find it deceptive as it artificially boosted the Company's growth rate by another 2% in 2012.  Internal growth is easy to come by if one counts the products that grow and excludes the products that fail.

## VIII.   THE PARTY IS OVER

Although the Company achieved internal growth of 7.1% in 2012, we believe that its internal growth rate will more than likely revert to the (anemic) mean of 3% in 2013 because of rapid and significant deceleration in sales growth of Greek Gods and Sensible Portions, the two products that accounted for an estimated 77% of internal sales growth in 2012.   This trend is reflected in recent Nielson data as well as Hain's recent decision to lower its revenue guidance for fiscal 2013.

### Mean Reversion of Hain's Internal Sales Growth[8]



According to recent Nielson data, Hain's yogurt category sales growth has imploded in recent months. We believe that this is due to increasing consumer awareness about Greek Gods substandard nutrition

---

[8] BMO Capital Markets research note dated 1/10/2013, page 1.

According to recent Nielson data, Hain's yogurt category sales growth has imploded in recent months. We believe that this is due to increasing consumer awareness about Greek Gods substandard nutrition profile, as well as increased competition from the major <u>expansions</u> of the four authentic players (Chobani, Fage, Danone, and General Mills) that control 90% of the Greek yogurt market.



Likewise, year-over-year growth of Sensible Portions Veggie Straws has fallen to less than 10% in the first quarter of FY2013, down sharply from triple digits the year prior. This trend is reflected in the most recent quarter ended December 2012, where management reduced its annual revenue guidance by around 5% (excluding the Blueprint acquisition).

In 2012, Hain experienced a temporary growth spurt, which we believe is attributable to the questionable marketing practices of the Greek Gods Yogurt (not authentic Greek yogurt, in our view) and Veggie Straws (not a nutritious alternative to vegetables, in our opinion).

As such, we believe that Hain's core business has not, and likely never will, generate the sustainable double-digit internal growth rates on par with authentic natural and organic food investments. The Company therefore deserves to trade in line with mature packaged food retailers that typically generate internal growth rates of 3% per year and not organic food companies like WhiteWave that boast internal growth rates of 10-12%.

THE HAIN CELESTIAL GROUP, INC. (NASDAQ:HAIN)                    www.abicorresearch.com

## IX.   SIMON SPEAKS! SIMON SELLS.

In our view, cutting corners allows management to **sell shares at a high price before the other shoe drops** in the form of FDA warning letters, attentive plaintiffs attorneys or learned customers.



During the last 21 months, Hain CEO Irwin Simon took advantage of a temporary boost in Hain's share price attributable to the flash-in-the-pan performance of Greek Gods and Sensible Portions to **dump $33 million of stock.**   From the table below, we see that he sold his stock in eleven tranches, **all of which appear to have been initiated within hours to 28 trading days after Simon appeared on CNBC to tout the growth prospects of his Company.**

### Irwin Simon Stock Sales

| Tranche | Date | Shares Sold | Price | Proceeds | Most Recent CNBC Showing | Trading Days After CNBC Appearance |
|---------|------|-------------|-------|----------|--------------------------|-------------------------------------|
| 1 | 2/20/2013 | 30,000 | 58.43 | 1,752,900 | 2/20 | SAME DAY |
| 2 | 2/15/2013 | 60,000 | 59.90 | 3,594,000 | 2/6 | 7 |
|   | 2/19/2013 | 10,000 | 59.48 | 594,800 | 2/6 | |
| 3 | 12/5/2012 | 5,000 | 60.38 | 301,881 | 11/26 | 7 |
| 4 | 11/18/2012 | 31,704 | 61.90 | 1,962,478 | 11/5 | 10 |
| 5 | 9/19/2012 | 21,124 | 66.28 | 1,400,099 | 8/12 | 28 |
| 6 | 5/9/2012 | 15,000 | 52.26 | 783,882 | 5/7 | 2 |
|   | 5/10/2012 | 60,000 | 52.11 | 3,126,624 | 5/7 | |
| 7 | 2/21/2012 | 30,000 | 40.26 | 1,207,857 | 2/2 | 13 |
|   | 2/22/2012 | 30,000 | 40.10 | 1,203,111 | 2/2 | |
|   | 2/23/2012 | 65,000 | 40.71 | 2,646,020 | 2/2 | |
| 8 | 12/1/2011 | 60,000 | 36.83 | 2,210,082 | 11/2 | 21 |
|   | 12/2/2011 | 40,000 | 36.77 | 1,470,920 | 11/2 | |
| 9 | 9/27/2011 | 12,722 | 30.99 | 394,255 | 8/25 | 23 |
| 10 | 8/29/2011 | 5,000 | 31.71 | 158,550 | 8/25 | 4 |
|   | 8/30/2011 | 5,000 | 31.97 | 159,850 | 8/25 | |
| 11 | 5/10/2011 | 60,000 | 34.94 | 2,096,400 | 4/13 | 19 |
|   | 5/11/2011 | 60,000 | 34.31 | 2,058,600 | 4/13 | |
|   | 5/12/2011 | 65,000 | 34.33 | 2,231,450 | 4/13 | |
|   | 5/13/2011 | 40,000 | 33.99 | 1,359,600 | 4/13 | |
|   | 5/16/2011 | 4,000 | 33.56 | 134,240 | 4/13 | |
|   | 5/17/2011 | 16,000 | 33.21 | 531,360 | 4/13 | |
|   | 5/18/2011 | 40,000 | 33.63 | 1,345,200 | 4/13 | |
|   | 5/19/2011 | 15,000 | 33.75 | 506,250 | 4/13 | |
|   |   |   | **Total** | **33,230,408** | | |

*Sources: Company filings, CNBC.com.*

THE HAIN CELESTIAL GROUP INC.   NASDAQ: HAIN     www.glaucusresearch.com

Investors should be aware. Simon's appearances on CNBC appear to be a precursor to a liquidity event. Just yesterday, on February 20, 2013, Simon discussed HAIN on CNBC on the same day that he appears to have sold $2 million worth of Company stock.

In perhaps the most egregious example, on Monday, May 7, 2012, Simon appeared on Cramer's "Mad Money." Cramer commended Hain for "knocking it out of the park" on its quarterly earnings, and said this is the stock to own for the "healthy eating trend that's sweeping not only the U.S., but the whole world."

Simon himself said "Jim, I heard you say we're a pricey expensive stock...come on, we're in the early innings...what's **happened with the packaged goods companies why are they not growing . . . the consumer is moving more and more** to **healthy products**," (emphasis added). Yet within the next 72 hours, Simon dumped **$4 million** of his stock on the public.



*Simon Speaks; Simon Sells*

The same month as Simon's October 2012 Mad Money appearance in which he boasted "that's all we do is natural and organic foods," Hain completed a major acquisition of a product line with, in our view, almost no exposure to the healthy foods market.

In October 2012, Hain acquired Premier Foods Brands, a primary asset of which was Hartley's, a maker of various jam and jelly-related products in the UK. The primary ingredients in Hartley's products are fructose syrup, sugar and a gelling agent (which, in our opinion, play no part in the healthy food movement). Hartley's jams are expected to comprise 15% of Hain's sales going forward, further evidence that Hain should be valued like a traditional packaged food company, not a leader in natural foods and organics.

Any future CNBC appearances by Simon should be viewed with extreme skepticism.

26

## X.    VALUATION

We believe that Hain is a traditional packaged foods company masquerading as an organic/healthy foods company.    To put into perspective the hype-machine driving the recent appreciation of Hain's stock price, consider that in October 2012 CEO Irwin Simon stated point-blank on CNBC that "all we do is natural and organic foods."[9]  We believe that this is obviously false.  But the market seems to have bought it.   Jim Cramer summed up the general misunderstanding of Hain's business last summer when he said that "Hain Celestial is a pure play on one of the hottest trends out there...the healthy eating theme."[10]

Natural and organic pure plays have two characteristics: (i) authentic, nutritious and non-deceptively marketed healthy and organic products, and (ii) internal growth rates on par with the natural and organic category growth (12% over the past decade).

This report has presented a body of evidence, derived from independent lab tests and other due diligence, showing that product lines representing 84% of Hain's 2012 internal growth and 40% of the Company's sales, (including Premier [~15% of sales], Sensible Portions [~7%], Celestial Seasonings [~8%], Personal Care Products [~4%], Greek Gods [~6%], and Deboles [~1%]), are either not natural/organic or are beset by quality control issues and/or deceptive labeling practices.  The other 60% of sales, as a group, appears to be growing slower than 3% per year, an anemic growth rate compared to peers in the natural and organic food category.

We believe that as the Company's exaggerated claims are exposed, Hain will revert to its historical (and anemic) internal growth rate of 3% and its share price will plummet.  There is certainly room to fall.  Hain appears to be trading at its highest price/book multiple in the last ten fiscal years.



*Note: historical high and low price to book ratio from BMO Capital Markets research note dated 1/10/2013.*

With a book value of around $22 per share, a return to merely the high end of this historical range would imply a fall to $40 per share (a 31% decline from the current stock price).   Likewise, a return to the historical mean would imply a stock price of $31.50, a 46% decline from here.

---

[9] CNBC 10/4/2012.
[10]  CNBC 8/12/2012.

Ultimately, we believe that Hain should trade in line with mature packaged food companies like Campbell Soup which have a ~3.5% long term internal growth forecast and trade at around 15.5x 2013 projected earnings. This would imply a stock price of $38, a 35% decline from today's stock price of $58 per share. We believe the market will eventually recognize Hain as a healthy food imposter, as neither its products nor its growth rate belong with the authentic healthy food comps.

By contrast, WhiteWave is an authentic healthy/organic foods company that we consider to be an authentic pure-play within the organic/healthy food category. We directed Eurofins to test samples of WhiteWave's organic, non-GMO and antibiotic free products against their respective claims, and the independent lab tests revealed that 100% of WhiteWave's products came back clean (test results are available in **Appendix III**). WhiteWave appears to have a suite of authentic USDA organic products that is growing sustainably at low double-digit rates. Compare this to the low single digit internal growth rate at Hain for the last decade. We believe that WhiteWave, not Hain, should trade at a premium price to reflect the anticipated boom in healthy and organic foods.

**Comparable Trading Multiples**

| | | Estimated Long Term Internal Sales Growth Rate[1] | 2013 P/E |
|---|---|---|---|
| **Traditional Packaged Food Comps w/ Similar Growth Profile as HAIN** | | | |
| Campbell Soup | CPB | 3.5% | 15.7x |
| ConAgra | CAG | 3.5% | 15.8x |
| General Mills | GIS | 3.5% | 17.0x |
| Kellogg | K | 3.5% | 15.4x |
| Kraft | KRFT | 3.5% | 17.7x |
| JM Smucker | SJM | 4.0% | 16.1x |
| Tyson | TSN | 3.0% | 11.2x |
| | **Average** | **3.5%** | **15.6x** |
| (healthy food imposter) | | ↑ | ↑ |
| **Hain Celestial** | **HAIN** | **3.2%** [2] | **23.7x** |
| **Whitewave** | **WWAV** | **12.0%** | **21.2x** |
| (clean tests, on-trend growth) | | ↓ | ↓ |
| **Authentic Healthy Food Comps** | | | |
| Annie's | BNNY | 20.0% | 40.1x |
| Fresh Market | TFM | 20.0% | 28.4x |
| Whole Foods | WFM | 15.0% | 29.7x |
| UNFI | UNFI | 10.0% | 24.3x |
| | **Average** | **16.3%** | **30.6x** |

[1] Morningstar/company management presentations.

[2] Estimated average internal growth rate 2000-2011.

Given the scarcity of great organic/healthy food companies, we believe that WhiteWave will be the company taking advantage of the trend in healthy eating that Irwin Simon was so excited about in his CNBC appearances. Hain, by comparison, should fall back to earth.



## APPENDIX I

## [TEA LAB REPORTS]



Person in charge
Client Support 



Reporting Date  12/14/2012

### REPORT OF ANALYSIS

Sample Code    468-2012-1204B167


AR-12-OA-041932-01

| | |
|---|---|
| Sample Description | DRIED TEAS |
| Client Sample Code | |
| Sample Reference | CELESTIAL SEASONINGS GREEN TEA PEACH BLOSSOM |

| | |
|---|---|
| Reception Date | 12/04/2012 |
| Reception Temperature | 25 (Celsius) |
| Sample Condition | Acceptable |
| Purchase Order | |

**Test Results**

**Result**

QAB31 - Pesticides (Tea, GC-MSMS)
Completion Date: 12/14/2012   Method: AOAC 2007.01

| | |
|---|---|
| Bifenthrin | 0.27 mg/kg |
| Chlorfenapyr | 0.28 mg/kg |
| Chlorpyrifos (-ethyl) | 0.03 mg/kg |
| Cyfluthrin | 0.04 mg/kg |
| Cyhalothrin lambda | 0.07 mg/kg |
| Cypermethrin | 0.04 mg/kg |
| Dicofol (sum) | 0.03 mg/kg |
| Dicofol, p,p- | 0.03 mg/kg |
| Fenpropathrin | 0.09 mg/kg |
| Other screened pesticides | Not Detected |
| Triazophos | 0.02 mg/kg |

QAB32 - Pesticides (Tea, LC-MS/MS)
Completion Date: 12/12/2012   Method: AOAC 2007.01

| | |
|---|---|
| Acetamiprid | 0.16 mg/kg |
| Buprofezin | 0.04 mg/kg |
| Fipronil | 0.01 mg/kg |
| Hexaflumuron | 0.02 mg/kg |
| Imidacloprid | 0.04 mg/kg |
| Other screened pesticides | Not Detected |
| Propargite | 0.06 mg/kg |
| Pyridaben | 0.05 mg/kg |

Any opinions/interpretations expressed on the Report of Analysis are outside the scope of this lab's A2LA accreditation.

A2LA ISO 17025:2005
*AOA ISO 9001:2008
Food and Drug Administration

American Oil Chemists Society
Grain and Feed Trade Association
Federation of Oils, Seed, and Fats Associations, Ltd

Japanese Ministry of Health and Welfare
Association of Official Analytical Chemists
United States Department of Agriculture

All work done in accordance with Eurofins General Terms and Conditions of Sale (USA); see reverse or www.eurofinsus.com/Terms_and_Conditions.pdf

Page 1 of 2

Analytical report: AR-12-OA-041932-01





Eurofins Sample Code: 468-2012-1204B167



**Client Sample Code:**

AR-12-QA-041932-01

## REPORT OF ANALYSIS

Test Results                                    Result

Comments

Total number compounds tested - 475
Based on the results of testing, the concentration of one or more of the
compounds targeted for analysis in the sample submitted exceeds the US
MRLs as stated in 40CFR180

Respectfully Submitted                          Results shown in this report relate solely to the item
Eurofins                                        submitted for analysis
                                                Uncertainty can be obtained upon request.



TESTING CERT
#2993-01

President

Any opinions/interpretations expressed on the Report of Analysis are outside the scope of this lab's A2LA accreditation.

A2LA ISO 17025:2005                American Oil Chemists Society              Japanese Ministry of Health and Welfare
NGA ISO 9001: 2008                 Grain and Feed Trade Association           Association of Official Analytical Chemists
Food and Drug Administration       Federation of Oils, Seeds, and Fats Associations, Ltd.   United States Department of Agriculture
All work done in accordance with Eurofins General Terms and Conditions of Sale (USA), see reverse or www.eurofinsus.com/Terms_and_Conditions.pdf

Analytical report: AR-12-QA-041932-01







Person in charge
Client Support

Reporting Date  12/14/2012

## REPORT OF ANALYSIS

AR-12-QA-041931-01

Sample Code     468-2012-1204B166

Sample Description   DRIED TEAS
Client Sample Code
Sample Reference     CELESTIAL SEASONINGS GREEN TEA
RASPBERRY GARDENS

Reception Date  12/04/2012
Reception Temperature  25 (Celsius)
Sample Condition  Acceptable
Purchase Order

### Test Results

**Result**

QAB31 - Pesticides (Tea, GC-MSMS)
Completion Date: 12/14/2012   Method: AOAC 2007.01

| | |
|---|---|
| Bifenthrin | 0.20 mg/kg |
| Chlorfenapyr | 0.32 mg/kg |
| Chlorpyrifos (-ethyl) | 0.02 mg/kg |
| Cyfluthrin | 0.04 mg/kg |
| Cyhalothrin lambda | 0.05 mg/kg |
| Cypermethrin | 0.04 mg/kg |
| Dicofol (sum) | 0.01 mg/kg |
| Dicofol, p.p- | 0.01 mg/kg |
| Fenpropathrin | 0.04 mg/kg |
| Other screened pesticides | Not Detected |
| Triazophos | 0.01 mg/kg |

QAB32 - Pesticides (Tea, LC-MS/MS)
Completion Date: 12/12/2012   Method: AOAC 2007.01

| | |
|---|---|
| Acetamiprid | 0.12 mg/kg |
| Buprofezin | 0.03 mg/kg |
| Hexaflumuron | 0.02 mg/kg |
| Imidacloprid | 0.04 mg/kg |
| Other screened pesticides | Not Detected |
| Propargite | 0.05 mg/kg |
| Pyridaben | 0.04 mg/kg |
| Thiacloprid | 0.03 mg/kg |

Any opinions/interpretations expressed on the Report of Analysis are outside the scope of this lab's A2LA accreditation.

A2LA ISO 17025:2005                                    American Oil Chemists Society                     Japanese Ministry of Health and Welfare
NCA ISO 9001:2008                                 Grain and Feed Trade Association              Association of Official Analytical Chemists
Food and Drug Administration              Federation of Oils, Seed, and Fats Associations, Ltd         United States Department of Agriculture
All work done in accordance with Eurofins General Terms and Conditions of Sale (USA). See reverse or www.eurofinsus.com/Terms_and_Conditions.pdf
Page 1 of 2                                                 Analytical report: AR-12-QA-041931-01





Eurofins Sample Code: 468-2012-1204B166



Client Sample Code:

AR-12-QA-041931-01

## REPORT OF ANALYSIS

| Test Results | Result |
|---|---|
| Comments | Total number compounds tested - 475 |
| | Based on the results of testing, the concentration of one or more of the compounds targeted for analysis in the sample submitted exceeds the US MRLs as stated in 40CFR180 |

Respectfully Submitted,
Eurofins

Results shown in this report relate solely to the item submitted for analysis.
Uncertainty can be obtained upon request.



TESTING CERT
#2993-01

President

Any opinions/interpretations expressed on the Report of Analysis are outside the scope of this lab's A2LA accreditation.

A2LA ISO 17025:2005
NGA ISO 9001: 2008
Food and Drug Administration

American Oil Chemists Society
Grain and Feed Trade Association
Federation of Oils, Seed, and Fats Associations, Ltd.

Japanese Ministry of Health and Welfare
Association of Official Analytical Chemists
United States Department of Agriculture

All work done in accordance with Eurofins General Terms and Conditions of Sale (USA); see reverse or www.eurofinsus.com/Terms_and_Conditions.pdf

Page 2 of 2

Analytical report  AR-12-QA-041931-01

THE HAIN CELESTIAL GROUP, INC. - STANDAC-1014N                    www.Planfusesearch.com

 eurofins





Person in charge
Client Support



Reporting Date  11/12/2012

## REPORT OF ANALYSIS



AR-12-QA-037734-03

This analytical report supersedes AR-12-QA-037734-02

Sample Code    468-2012-1030B157

Sample Description   TEA, DRIED
Client Sample Code   07AUG14A
Sample Reference   CELESTIAL SEASONINGS - AUTHENTIC
                   GREEN TEA

Reception Date  10/30/2012
Reception Temperature  26 (Celsius)
Sample Condition  Acceptable
Purchase Order

### Test Results

Result

QAB31 - Pesticides (Tea, GC-MSMS)
Completion Date: 11/09/2012   Method: AOAC 2007.01

| | |
|---|---|
| Bifenthrin | 0.28 mg/kg |
| Chlorfenapyr | 0.14 mg/kg |
| Chlorpyrifos (-ethyl) | 0.02 mg/kg |
| Cyfluthrin | 0.04 mg/kg |
| Cyhalothrin lambda | 0.05 mg/kg |
| Cypermethrin | 0.07 mg/kg |
| Endosulfan I (alpha-endosulfan) | 0.01 mg/kg |
| Endosulfan II (beta-Endosulfan) | 0.04 mg/kg |
| Endosulfan sulphate | 0.06 mg/kg |
| Fenpropathrin | 0.01 mg/kg |
| Other screened pesticides | Not Detected |
| Permethrin | 0.01 mg/kg |

QAB32 - Pesticides (Tea, LC-MS/MS)
Completion Date: 11/06/2012   Method: AOAC 2007.01

| | |
|---|---|
| Acetamiprid | 0.11 mg/kg |
| Buprofezin | 0.04 mg/kg |
| Hexaflumuron | 0.02 mg/kg |
| Imidacloprid | 0.09 mg/kg |
| Other screened pesticides | Not Detected |

Any opinions/interpretations expressed on the Report of Analysis are outside the scope of this lab's A2LA accreditation.

A2LA ISO 17025:2005                    American Oil Chemists Society                Japanese Ministry of Health and Welfare
NQA ISO 9001: 2008                     Grain and Feed Trade Association          Association of Official Analytical Chemists
Food and Drug Administration        Federation of Oils, Seed, and Fats Associations, Ltd          United States Department of Agriculture
All work done in accordance with Eurofins General Terms and Conditions of Sale (USA), see reverse or www.eurofinsus.com/Terms_and_Conditions.pdf
                                       Page 1 of 2                          Analytical report: AR-12-QA-037734-03





Eurofins Sample Code: 468-2012-1030B157

Client Sample Code: 07AUG14A

# REPORT OF ANALYSIS

This analytical report supersedes AR-12-QA-037734-02

AR-12-QA-037734-03

| Test Results | Result |
| --- | --- |
| Comments | Total number compounds tested - 475 |

Based on the results of pesticide testing, this sample fails to meet US Regulations as stated in 40CFR180

Respectfully Submitted,
Eurofins

Results shown in this report relate solely to the item submitted for analysis.
Uncertainty can be obtained upon request.



President

TESTING CERT
#2993-01
ACCREDITED

Any opinions/interpretations expressed on the Report of Analysis are outside the scope of this lab's A2LA accreditation.

A2LA ISO 17025:2005
NQA ISO 9001:2008
Food and Drug Administration

American Oil Chemists Society
Grain and Feed Trade Association
Federation of Oils, Seed, and Fats Associations, Ltd

Japanese Ministry of Health and Welfare
Association of Official Analytical Chemists
United States Department of Agriculture

All work done in accordance with Eurofins General Terms and Conditions of Sale (USA), see reverse or www.eurofinsus.com/terms_and_Conditions.pdf

Analytical report: AR-12-QA-037734-03

34





Person in charge
Client Support



Reporting Date  12/14/2012



AR-12-QA-041850-02

## REPORT OF ANALYSIS

This analytical report supersedes AR-12-QA-041850-01.

Sample Code    468-2012-1204B164

| | |
|---|---|
| Sample Description | DRIED TEAS |
| Client Sample Code | |
| Sample Reference | CELESTIAL SEASONINGS ANTIOXIDANT MAX GREEN TEA DRAGON FRUIT MELON |

| | |
|---|---|
| Reception Date | 12/04/2012 |
| Reception Temperature | 25 (Celsius) |
| Sample Condition | Acceptable |
| Purchase Order | |

### Test Results

**Result**

**QAB31 - Pesticides (Tea, GC-MSMS)**
Completion Date: 12/14/2012   Method: AOAC 2007.01

| | |
|---|---|
| Bifenthrin | 0.11 mg/kg |
| Chlorfenapyr | 0.27 mg/kg |
| Chlorpyrifos (-ethyl) | 0.03 mg/kg |
| Cyhalothrin lambda | 0.05 mg/kg |
| Cypermethrin | 0.04 mg/kg |
| Dicofol (sum) | 0.03 mg/kg |
| Dicofol, p,p- | 0.03 mg/kg |
| Fenpropathrin | 0.02 mg/kg |
| Other screened pesticides | Not Detected |
| Triazophos | 0.02 mg/kg |

**QAB32 - Pesticides (Tea, LC-MS/MS)**
Completion Date: 12/12/2012   Method: AOAC 2007.01

| | |
|---|---|
| Acetamiprid | 0.08 mg/kg |
| Buprofezin | 0.03 mg/kg |
| Fenobucarb | <0.01 mg/kg |
| Imidacloprid | 0.02 mg/kg |
| Other screened pesticides | Not Detected |
| Propargite | 0.06 mg/kg |
| Pyridaben | 0.03 mg/kg |
| Thiacloprid | 0.04 mg/kg |

Any opinions/interpretations expressed on the Report of Analysis are outside the scope of this lab's A2LA accreditation.

A2LA ISO 17025:2005
NQA ISO 9001: 2008
Food and Drug Administration

American Oil Chemists Society
Grain and Feed Trade Association
Federation of Oils, Seed, and Fats Associations, Ltd

Japanese Ministry of Health and Welfare
Association of Official Analytical Chemists
United States Department of Agriculture

All work done in accordance with Eurofins General Terms and Conditions of Sale (USA); see reverse or www.eurofinsus.com/Terms_and_Conditions.pdf

Analytical report: AR-12-QA-041850-02

35







Eurofins Sample Code: 468-2012-1204B164

Client Sample Code:

AR-12-QA-041850-02

## REPORT OF ANALYSIS
This analytical report supersedes AR-12-QA-041850-01

| Test Results | Result |
|---|---|
| Comments | Total Compounds tested - 475 |
| | Based on the results of testing, the concentration of one or more of the compounds targeted for analysis in the sample submitted exceeds the US MRLs as stated in 40CFR180 |

Respectfully Submitted.
Eurofins

Results shown in this report relate solely to the item submitted for analysis.
Uncertainty can be obtained upon request.



President

TESTING CERT
#2993-01

Any opinions/interpretations expressed on the Report of Analysis are outside the scope of this lab's A2LA accreditation.

A2LA ISO 17025:2005                American Oil Chemists Society                Japanese Ministry of Health and Welfare
NQA ISO 9001: 2008                 Grain and Feed Trade Association            Association of Official Analytical Chemists
Food and Drug Administration       Federation of Oils, Seed and Fats Associations, Ltd    United States Department of Agriculture
All work done in accordance with Eurofins General Terms and Conditions of Sale (USA); see reverse or www.eurofinsus.com/Terms_and_Conditions.pdf
Page 2 of 2                                                                    Analytical report: AR-12-QA-041850-02





Person in charge
Client Support 



Reporting Date  12/14/2012

## REPORT OF ANALYSIS

Sample Code   468-2012-1204B168

AR-12-QA-041933-01

| | | |
|---|---|---|
| Sample Description | DRIED TEAS | Reception Date 12/04/2012 |
| Client Sample Code | | Reception Temperature 25 (Celsius) |
| Sample Reference | CELESTIAL SEASONINGS GREEN TEA HONEY | Sample Condition Acceptable |
| | LEMON GINSENG | Purchase Order |

**Test Results**                                                                    **Result**

QAB31 - Pesticides (Tea, GC-MSMS)
Completion Date: 12/14/2012   Method: AOAC 2007 01

| | |
|---|---|
| Bifenthrin | 0.21 mg/kg |
| Chlorfenapyr | 0.05 mg/kg |
| Chlorpyrifos (-ethyl) | 0.02 mg/kg |
| Cyfluthrin | 0.04 mg/kg |
| Cyhalothrin lambda | 0.03 mg/kg |
| Cypermethrin | 0.05 mg/kg |
| Other screened pesticides | Not Detected |

QAB32 - Pesticides (Tea, LC-MS/MS)
Completion Date: 12/12/2012   Method: AOAC 2007 01

| | |
|---|---|
| Acetamiprid | 0.13 mg/kg |
| Buprofezin | 0.02 mg/kg |
| Hexaflumuron | 0.02 mg/kg |
| Imidacloprid | 0.04 mg/kg |
| Other screened pesticides | Not Detected |
| Pyridaben | 0.03 mg/kg |

Comments

Total number compounds tested - 475
Based on the results of testing, the concentration of one or more of the
compounds targeted for analysis in the sample submitted exceeds the US
MRLs as stated in 40CFR180

Any opinions/interpretations expressed on the Report of Analysis are outside the scope of this lab's A2LA accreditation.

A2LA ISO 17025:2005        American Oil Chemists Society        Japanese Ministry of Health and Welfare
NQA ISO 9001:2008          Grain and Feed Trade Association     Association of Official Analytical Chemists
Food and Drug Administration     Federation of Oils, Seed, and Fats Associations, Ltd     United States Department of Agriculture
All work done in accordance with Eurofins General Terms and Conditions of Sale (USA), see reverse or www.eurofinsus.com/Terms_and_Conditions.pdf
                              Page 1 of 2                        Analytical report: AR-12-QA-041933-01




Eurofins Sample Code: 468-2012-1204B168

Client Sample Code:

**REPORT OF ANALYSIS**

AR-12-QA-041933-01

Test Results

Result

Results shown in this report relate solely to the item submitted for analysis.
Uncertainty can be obtained upon request.

Respectfully Submitted,
Eurofins



President



TESTING CERT #2993-01
ACCREDITED

Any opinions/interpretations expressed on the Report of Analysis are outside the scope of this lab's A2LA accreditation.

A2LA ISO 17025:2005
NGA ISO 9001: 2008
Food and Drug Administration

American Oil Chemists Society
Grain and Feed Trade Association
Federation of Oils, Seed, and Fats Associations, Ltd.

Japanese Ministry of Health and Welfare
Association of Official Analytical Chemists
United States Department of Agriculture

All work done in accordance with Eurofins General Terms and Conditions of Sale (USA), see reverse or www.eurofinsus.com/Terms_and_Conditions.pdf

Page 2 of 2

Analytical report: AR-12-QA-041933-01

38






Person in charge
Client Support





Reporting Date  12/14/2012

|||||||||||||||||||||||||||||||||||||
AR-12-QA-041935-01

## REPORT OF ANALYSIS

Sample Code    468-2012-1204B170

Sample Description   DRIED TEAS
Client Sample Code
Sample Reference   CELESTIAL SEASONINGS ANTIOXIDANT MAX
BLACKBERRY POMEGRANATE

Reception Date  12/04/2012
Reception Temperature  25 (Celsius)
Sample Condition  Acceptable
Purchase Order

**Test Results**

Result

QAB31 - Pesticides (Tea, GC-MSMS)
Completion Date: 12/14/2012   Method: AOAC 2007.01

| | |
|---|---|
| Bifenthrin | 0.11 mg/kg |
| Chlorfenapyr | 0.36 mg/kg |
| Chlorpyrifos (-ethyl) | 0.03 mg/kg |
| Cyhalothrin lambda | 0.05 mg/kg |
| Cypermethrin | 0.11 mg/kg |
| Dicofol (sum) | 0.01 mg/kg |
| Dicofol, p,p- | 0.01 mg/kg |
| Fenpropathrin | 0.04 mg/kg |
| Other screened pesticides | Not Detected |

QAB32 - Pesticides (Tea, LC-MS/MS)
Completion Date: 12/12/2012   Method: AOAC 2007.01

| | |
|---|---|
| Acetamiprid | 0.13 mg/kg |
| Buprofezin | 0.04 mg/kg |
| Fludioxonil | 0.01 mg/kg |
| Imidacloprid | 0.15 mg/kg |
| Other screened pesticides | Not Detected |
| Propargite | 0.07 mg/kg |
| Pyridaben | 0.04 mg/kg |

Any opinions/interpretations expressed on the Report of Analysis are outside the scope of this lab's A2LA accreditation.

A2LA ISO 17025:2005                    American Oil Chemists Society                Japanese Ministry of Health and Welfare
NQA ISO 9001: 2008                     Grain and Feed Trade Association             Association of Official Analytical Chemists
Food and Drug Administration    Federation of Oils, Seeds, and Fats Associations, Ltd    United States Department of Agriculture
All work done in accordance with Eurofins General Terms and Conditions of Sale (USA), see reverse or www.eurofinsus.com/Terms_and_Conditions.pdf

THE GRAIN CHEMICAL GROUP, INC. (NASDAQ : GRAS) www.grainchemicalresearch.com







Eurofins Sample Code: 468-2012-1204B170

Client Sample Code:

AR-12-OA-041935-01

### REPORT OF ANALYSIS

| Test Results | Result |
|---|---|

Comments

Total number compounds tested - 475
Based on the results of testing, the concentration of one or more of the compounds targeted for analysis in the sample submitted exceeds the US MRLs as stated in 40CFR180

Respectfully Submitted,
Eurofins

Results shown in this report relate solely to the item submitted for analysis.
Uncertainty can be obtained upon request.



President

TESTING CERT
#2993-01
ACCREDITED

Any opinions/interpretations expressed on the Report of Analysis are outside the scope of this lab's A2LA accreditation.

A2LA ISO 17025:2005
NOA ISO 9001: 2008
Food and Drug Administration

American Oil Chemists Society
Grain and Feed Trade Association
Federation of Oils, Seed, and Fats Associations, Ltd

Japanese Ministry of Health and Welfare
Association of Official Analytical Chemists
United States Department of Agriculture

All work done in accordance with Eurofins General Terms and Conditions of Sale (USA), see reverse or www.eurofinsus.com/Terms_and_Conditions.pdf





Person in charge
Client Support



Reporting Date  12/14/2012



AR-12-QA-041934-01

## REPORT OF ANALYSIS

Sample Code    468-2012-1204B169

| | |
|---|---|
| Sample Description  DRIED TEAS | Reception Date  12/04/2012 |
| Client Sample Code | Reception Temperature  25 (Celsius) |
| Sample Reference  CELESTIAL SEASONINGS ANTIOXIDANT MAX | Sample Condition  Acceptable |
| BLOOD ORANGE STAR FRUIT | Purchase Order |

### Test Results

**Result**

**QAB31 - Pesticides (Tea, GC-MSMS)**
Completion Date: 12/14/2012   Method: AOAC 2007.01

| | |
|---|---|
| Bifenthrin | 0.09 mg/kg |
| Chlorfenapyr | 0.10 mg/kg |
| Chlorpyrifos (-ethyl) | 0.02 mg/kg |
| Cyhalothrin lambda | 0.04 mg/kg |
| Cypermethrin | 0.09 mg/kg |
| Dicofol (sum) | 0.02 mg/kg |
| Dicofol  p,p- | 0.02 mg/kg |
| Fenpropathrin | 0.03 mg/kg |
| Other screened pesticides | Not Detected |
| Triazophos | 0.01 mg/kg |

**QAB32 - Pesticides (Tea, LC-MS/MS)**
Completion Date: 12/12/2012   Method: AOAC 2007.01

| | |
|---|---|
| Acetamiprid | 0.07 mg/kg |
| Buprofezin | 0.03 mg/kg |
| Imidacloprid | 0.12 mg/kg |
| Other screened pesticides | Not Detected |
| Propargite | 0.08 mg/kg |
| Pyridaben | 0.03 mg/kg |

Any opinions/interpretations expressed on the Report of Analysis are outside the scope of the lab's A2LA accreditation.

A2LA ISO 17025:2005                                  American Oil Chemists Society                    Japanese Ministry of Health and Welfare
NOA ISO 9001:2008                                    Grain and Feed Trade Association              Association of Official Analytical Chemists
Food and Drug Administration                   Federation of Oils, Seed, and Fats Associations, Ltd        United States Department of Agriculture
All work done in accordance with Eurofins General Terms and Conditions of Sale (USA); see reverse or www.eurofinsus.com/Terms_and_Conditions.pdf
                                                                          Page 1 of 2                                    Analytical report: AR-12-QA-041934-01

41

TIBETAN CELESTIAL GROUP, INC. (NASDAQ: TCG)                    www.tibetanceleschinogroup





Eurofins Sample Code: 468-2012-1204B169                    Client Sample Code:

## REPORT OF ANALYSIS

AR-12-QA-041934-01

**Test Results**                                    **Result**

Comments

Total number compounds tested - 475
Based on the results of testing, the concentration of one or more of the
compounds targeted for analysis in the sample submitted exceeds the US
MRLs as stated in 40CFR180

Respectfully Submitted                    Results shown in this report relate solely to the item
Eurofins                                   submitted for analysis.
                                           Uncertainty can be obtained upon request.



President                    TESTING CERT
                             #2993-01
                             ACCREDITED

Any opinions/interpretations expressed on the Report of Analysis are outside the scope of this lab's A2LA accreditation.

A2LA ISO 17025:2005                American Oil Chemists Society            Japanese Ministry of Health and Welfare
NGA ISO 9001: 2008                 Grain and Feed Trade Association          Association of Official Analytical Chemists
Food and Drug Administration       Federation of Oils, Seed, and Fats Associations, Ltd   United States Department of Agriculture

All work done in accordance with Eurofins General Terms and Conditions of Sale (USA); see reverse or www.eurofinsus.com/Terms_and_Conditions.pdf
                                           Analytical report: AR-12-QA-041934-01
                                    Page 2 of 2

42

THE HAIN CELESTIAL GROUP, INC.   IN-ASPAC - ITALY          www.hainceslestialn.com

 eurofins



Person in charge
Client Support





Reporting Date  12/14/2012

## REPORT OF ANALYSIS

Sample Code    468-2012-1204B172

AR-12-OA-041937-01

| | | |
|---|---|---|
| Sample Description | DRIED TEAS | Reception Date 12/04/2012 |
| Client Sample Code | | Reception Temperature 25 (Celsius) |
| Sample Reference | CELESTIAL SEASONINGS SLEEPYTIME KIDS GOODNIGHT GRAPE HERBAL TEA | Sample Condition Acceptable |
| | | Purchase Order |

### Test Results                                                        Result

**QAB31 - Pesticides (Tea, GC-MSMS)**
Completion Date: 12/14/2012   **Method:** AOAC 2007.01

| | |
|---|---|
| Chlorpyrifos (-ethyl) | 0.14 mg/kg |
| Malathion | 0.20 mg/kg |
| Other screened pesticides | Not Detected |
| Profenofos | 0.02 mg/kg |
| Propachlor | 0.26 mg/kg |

**QAB32 - Pesticides (Tea, LC-MS/MS)**
Completion Date: 12/12/2012   **Method:** AOAC 2007.01

| | |
|---|---|
| Carbendazim | 0.02 mg/kg |
| Diazinon | 0.01 mg/kg |
| Dimethoate | 0.09 mg/kg |
| Other screened pesticides | Not Detected |

Comments            Total number compounds tested - 475

Based on the results of  testing, the concentration of  one or more of the compounds targeted for analysis in the  sample submitted exceeds  the  US MRLs as stated in 40CFR180

Any opinions/interpretations expressed on the Report of Analysis are outside the scope of this lab's A2LA accreditation.

A2LA ISO 17025:2005                     American Oil Chemists Society            Japanese Ministry of Health and Welfare
NQA ISO 9001: 2008                       Grain and Feed Trade Association         Association of Official Analytical Chemists
Food and Drug Administration          Federation of Oils, Seed, and Fats Associations, Ltd    United States Department of Agriculture
All work done in accordance with Eurofins General Terms and Conditions of Sale (USA); see reverse of www.eurofinsus.com/Terms_and_Conditions.pdf

Page 1 of 2                                     Analytical report  AR-12-OA-041937-01

43

THE MARCHIES STATE GROUP, INC. (NASDAQ: TRAN)                WWW.TRANCOSINVESTMENT

 eurofins

Eurofins Sample Code: 468-2012-1204B172

Client Sample  Code:

## REPORT OF ANALYSIS

AR-12-QA-041937-01

Test Results                                                    Result

Respectfully Submitted.
Eurofins ▮▮▮▮▮▮▮▮▮▮

Results shown in this report relate solely to the item
submitted for analysis
Uncertainty can be obtained upon request

 TESTING CERT
#2993-01

President

Any opinions/interpretations expressed on the Report of Analysis are outside the scope of this lab's A2LA accreditation.

A2LA ISO 17025:2005                    American Oil Chemists Society              Japanese Ministry of Health and Welfare
NGA ISO 9001: 2008                     Grain and Feed Trade Association           Association of Official Analytical Chemists
Food and Drug Administration           Federation of Oils, Seed, and Fats Associations, Ltd        United States Department of Agriculture
All work done in accordance with Eurofins General Terms and Conditions of Sale (USA); see reverse or www.eurofinsus.com/Terms_and_Conditions.pdf

44





Person in charge
Client Support



Reporting Date  12/14/2012

## REPORT OF ANALYSIS

Sample Code    468-2012-1204B165

AR-12-QA-041851-01

Sample Description  DRIED TEAS
Client Sample Code
Sample Reference   CELESTIAL SEASONINGS SLEEPYTIME HERB
TEAS

Reception Date  12/04/2012
Reception Temperature  25 (Celsius)
Sample Condition  Acceptable
Purchase Order

**Test Results**                                                           **Result**

QAB31 - Pesticides (Tea, GC-MSMS)
Completion Date: 12/14/2012   Method: AOAC 2007.01
  Chlorpyrifos (-ethyl)                                          0.09 mg/kg
  Malathion                                                      0.05 mg/kg
  Other screened pesticides                          Not Detected
  Profenofos                                                     0.01 mg/kg

QAB32 - Pesticides (Tea, LC-MS/MS)
Completion Date: 12/12/2012   Method: AOAC 2007.01
  Carbendazim                                                    0.03 mg/kg
  Chlorantraniliprole                                            0.02 mg/kg
  Diazinon                                                       0.01 mg/kg
  Dimethoate                                                     0.04 mg/kg
  Other screened pesticides                          Not Detected

Comments               Total Compounds tested - 475
Based on the results of  testing, the concentration of  one or more of the
compounds targeted for analysis in the  sample submitted exceeds  the  US
MRLs as stated in 40CFR180

Any opinions/interpretations expressed on the Report of Analysis are outside the scope of this lab's A2LA accreditation.

A2LA ISO 17025:2005
NQA ISO 9001: 2008
Food and Drug Administration

American Oil Chemists Society
Grain and Feed Trade Association
Federation of Oils, Seed, and Fats Associations, Ltd

Japanese Ministry of Health and Welfare
Association of Official Analytical Chemists
United States Department of Agriculture

All work done in accordance with Eurofins General Terms and Conditions of Sale (USA); see reverse of www.eurofinsus.com/Terms_and_Conditions.pdf
Page 1 of 2                                        Analytical report: AR-12-QA-041851-01

45







Eurofins Sample Code: 468-2012-1204B165

**REPORT OF ANALYSIS**

Client Sample Code:

AR-12-QA-041851-01

Test Results                                    Result

Respectfully Submitted,
Eurofins



President

Results shown in this report relate solely to the item submitted for analysis
Uncertainty can be obtained upon request.

TESTING CERT #2993-01
ACCREDITED

Any opinions/interpretations expressed on the Report of Analysis are outside the scope of this lab's A2LA accreditation.

A2LA ISO 17025:2005
NQA ISO 9001: 2008
Food and Drug Administration

American Oil Chemists Society
Grain and Feed Trade Association
Federation of Oils, Seed, and Fats Associations Ltd

Japanese Ministry of Health and Welfare
Association of Official Analytical Chemists
United States Department of Agriculture

All work done in accordance with Eurofins General Terms and Conditions of Sale (USA); see reverse or www.eurofinsus.com/Terms_and_Conditions.pdf

Analytical report  AR-12-QA-041851-01





Person in charge
Client Support



Reporting Date  11/13/2012

# REPORT OF ANALYSIS

This analytical report supersedes AR-12-QA-037735-04



AR-12-QA-037735-05

Sample Code    468-2012-1030B158

| | | Reception Date | 10/30/2012 |
|---|---|---|---|
| Sample Description | TEA, DRIED | Reception Temperature | 25 (Celsius) |
| Client Sample Code | 19MAR13 17:29 | Sample Condition | Acceptable |
| Sample Reference | CELESTIAL SEASONINGS ENGLISH | Purchase Order | |
| | BREAKFAST BLACK TEA K-CUP FOR KEURIG | | |
| | BREWERS | | |

### Test Results                                                          Result

**QAB31 - Pesticides (Tea, GC-MSMS)**
Completion Date: 11/09/2012    Method: AOAC 2007.01

| | |
|---|---|
| Cypermethrin | 0.04 mg/kg |
| Dimethachlor | 0.03 mg/kg |
| Other screened pesticides | Not Detected |
| p,p'-DDT | 0.01 mg/kg |

**QAB32 - Pesticides (Tea, LC-MS/MS)**
Completion Date: 11/06/2012    Method: AOAC 2007.01

| | |
|---|---|
| Acetamiprid | 0.06 mg/kg |
| Fenpyroximate | 0.01 mg/kg |
| Imidacloprid | 0.09 mg/kg |
| Other screened pesticides | Not Detected |
| Propargite | 0.07 mg/kg |
| Thiamethoxam | 0.05 mg/kg |

Comments        Total number compounds tested - 475

Based on the results of pesticide testing, this sample fails to meet US Regulations as stated in 40CFR180.

Any opinions/interpretations expressed on the Report of Analysis are outside the scope of this lab's A2LA accreditation.

A2LA ISO 17025:2005                    American Oil Chemists Society          Japanese Ministry of Health and Welfare
NQA ISO 9001: 2008                     Grain and Feed Trade Association        Association of Official Analytical Chemists
Food and Drug Administration           Federation of Oils, Seeds, and Fats Associations, Ltd.   United States Department of Agriculture
All work done in accordance with Eurofins General Terms and Conditions of Sale (USA); see reverse or www.eurofinsus.com/Terms_and_Conditions.pdf
                                              Page 1 of 2                          Analytical report: AR-12-QA-037735-05

47





Eurofins Sample Code: 468-2012-1030B15B

Client Sample Code: 19MAR13 17:29

## REPORT OF ANALYSIS

This analytical report supersedes AR-12-QA-037735-04

AR-12-QA-037735-05

| Test Results | Result |
|---|---|

Respectfully Submitted,
Eurofins 

Results shown in this report relate solely to the item
submitted for analysis.
Uncertainty can be obtained upon request.



TESTING CERT
#2993-01

Any opinions/interpretations expressed on the Report of Analysis are outside the scope of this lab's A2LA accreditation.

A2LA ISO 17025:2005
NGA ISO 9001: 2008
Food and Drug Administration

American Oil Chemists Society
Grain and Feed Trade Association
Federation of Oils, Seed, and Fats Associations Ltd.

Japanese Ministry of Health and Welfare
Association of Official Analytical Chemists
United States Department of Agriculture

All work done in accordance with Eurofins General Terms and Conditions of Sale (USA); see reverse or www.eurofinsus.com/Terms_and_Conditions.pdf

Analytical report: AR-12-QA-037735-05

48





Person in charge
Client Support



Reporting Date  12/14/2012

## REPORT OF ANALYSIS

Sample Code    468-2012-1204B171

AR-12-QA-041936-01

| | |
|---|---|
| Sample Description | DRIED TEAS |
| Client Sample Code | |
| Sample Reference | CELESTIAL SEASONINGS ROOIBOS SAFARI SPICE |

| | |
|---|---|
| Reception Date | 12/04/2012 |
| Reception Temperature | 25 (Celsius) |
| Sample Condition | Acceptable |
| Purchase Order | |

### Test Results

**Result**

QAB31 - Pesticides (Tea, GC-MSMS)
Completion Date: 12/13/2012  Method: AOAC 2007.01
   Screened pesticides                                               Not Detected

QAB32 - Pesticides (Tea, LC-MS/MS)
Completion Date: 12/13/2012  Method: AOAC 2007.01
   Screened pesticides                                               Not Detected

Comments       Total number compounds tested - 475

Based on the results of  testing, the concentration of  the compounds
targeted for analysis in the  sample submitted is within  the  US  MRLs as
stated in 40CFR180

Respectfully Submitted
Eurofins 

Results shown in this report relate solely to the item
submitted for analysis.
Uncertainty can be obtained upon request.



TESTING CERT
#2993-01

President

Any opinions/interpretations expressed on the Report of Analysis are outside the scope of this lab's A2LA accreditation.

A2LA ISO 17025:2005
NQA ISO 9001:2008
Food and Drug Administration

American Oil Chemists Society
Grain and Feed Trade Association
Federation of Oils, Seed, and Fats Associations, Ltd

Japanese Ministry of Health and Welfare
Association of Official Analytical Chemists
United States Department of Agriculture

All work done in accordance with Eurofins General Terms and Conditions of Sale (USA), see reverse or www.eurofinsus.com/Terms_and_Conditions.pdf

Page 1 of 1

Analytical report  AR-12-QA-041936-01

49

## APPENDIX II

### Footnotes to Hain Internal Growth Table

| | Acquisition/Disposal Completion Date | Target | First 12 months Sales($US mm) | Source for Sales Figure |
|---|---|---|---|---|
| A | 6/8/2001 | Yves Veggie Cuisine | 35 | Press release (link) |
| B | 1/18/2001 | Fruit Chips B.V. (Neth) | 10 | Assume 1x purch price from 2003 form 10-K |
| C | 12/?/2001 | Lima N.V. (Belgium) | 20 | Press release (link) |
| D | 12/2/2002 | Imagine Foods | 70 | Press release (link) |
| E | 5/14/2003 | Grains Noirs, N.V. (Belgium) | 2 | estimated |
| F | 6/17/2003 | Acirca | 20 | Press release (link) |
| G | 6/3/2004 | Jason Natural Products | 20 | Press release (link) |
| H | 5/27/2004 | Rosetto and Ethnic Gourmet | 30 | Press release (link) |
| I | 4/5/2005 | Zia Cosmetics | 8 | Press release (link) |
| J | 12/16/2005 | Spectrum Organic | 50 | Press release (link) |
| K | 3/3/2006 | Para Laboratories | 20 | Press release (link) |
| L | 4/30/2006 | Fresh prepared foods (U.K.) | 55 | Press release (link) |
| M | 6/12/2006 | Linda McCartney | 50 | JPM report 12/12/2006 pg 56 |
| N | 7/1/2005 | Freebird | 31 | 2008 10-K; entire first year of Protein sgmt FY2006 |
| O | 12/8/2006 | Haldane | 20 | Press release (link) |
| P | 8/31/2006 | Biomarche (disposal of) | (18) | 2007 10-K, page 70 |
| Q | 1/11/2007 | Avalon Natural Products | 40 | Press release (link) |
| R | 4/2/2008 | Daily Bread | 24 | Press release (link) |
| S | 3/6/2008 | MaraNatha & Sunspire | 40 | Press release (link) |
| T | 8/29/2007 | Plainville | 67 | Annualized increase in Protein sgmt 2008 10-K |
| U | 6/8/2007 | Whitewave tofu business | 8 | estimate |

50

THE HAIN CELESTIAL GROUP, INC. (NASDAQ: HAIN)                    www.plaintiffresearch.com

## Appendix II - Footnotes to Hain Internal Growth Table (continued)

| | Acquisition/Disposal Completion Date | Target | First 12 months Sales($US mm) | Source for Sales Figure |
|---|---|---|---|---|
| V | 6/15/2010 | Sensible Portions | 93 | estimated first 12 mths sales based on Hain mgmt remarks on 6/5/2012 Piper Jaffrey conference (62mm prior to purchase) and 8/11/11 conf call (50% growth in FY 2011, first year of ownership) |
| W | 6/15/2010 | Churchill Food Products | 5 | Janney report 10/4/12 pg 7 |
| X | 7/2/2010 | Greek Gods | 30 | estimated first 12 mths sales based on Hain mgmt remarks on 8/11/11 conf call (~17mm prior to first year owned, 80% grwth in FY2011, first year owned) |
| Y | 2/4/2011 | Danival | 20 | Press release (link) |
| Z | 1/28/2011 | GG Unique Fiber | 2 | Press release (link) |
| a | 6/30/2009 | Protein Sgmt (deconsolidate) | 166 | change of accounting for the protein segment to equity method from full consolidation |
| b | 4/27/2012 | Cully & Sully | 14 | estimate |
| c | 10/5/2011 | Europe's Best | 10 | Janney report 10/4/12 pg 7 |
| d | 10/25/2011 | Daniel's | 238 | Hain 2012 10-K discloses actual first year sales of $144mm. |

e       Note: the base year of sales for 2000 includes a full year of Celestial Seasonings (acquired 3/2000) under the pooling of interests method of accounting as well as reflects the accounting change for gross to net sales adjustments for certain promotional expenses.

THE FRANCIS LESTER GROUP, INC. | QINGDAO, CHINA | www.francislester.com

**APPENDIX III**

**[WhiteWave LAB REPORTS]**

 eurofins



Person in charge
Client Support 



Reporting Date  11/12/2012

AR-12-QA-037932-02

### REPORT OF ANALYSIS

This analytical report supersedes AR-12-QA-037932-01

**Sample Code    468-2012-1102B162**

| | | | |
|---|---|---|---|
| Sample Description | BUTTER | Reception Date | 11/02/2012 |
| Client Sample Code | 011913 31212 0903AM | Reception Temperature | 11 (Celsius) |
| Sample Reference | HORIZON ORGANICS UNSALTED BUTTER | Sample Condition | Acceptable |
| | | Purchase Order | |

**Test Results**                                                                **Result**

QA887 - Pesticides OC/PCB (S-19 GC-MS)
Completion Date: 11/12/2012    Method: ASU L00.00-34
   Screened pesticides                                              Not Detected

QA888 - Pesticides OP/ON (S-19)
Completion Date: 11/12/2012    Method: ASU L00.00-34
   Screened pesticides                                              Not Detected

Respectfully Submitted                    Results shown in this report relate solely to the item
Eurofins                                  submitted for analysis.
                                          Uncertainty can be obtained upon request.



President

A2LA ISO 17025:2005                   American Oil Chemists Society          Japanese Ministry of Health and Welfare
NQA ISO 9001:2008                 Grain and Feed Trade Association       Association of Official Analytical Chemists
Food and Drug Administration       Federation of Oils, Seed, and Fats Associations, Ltd      United States Department of Agriculture
All work done in accordance with Eurofins General Terms and Conditions of Sale (USA); see reverse or www.eurofinsus.com/Terms_and_Conditions.pdf
Page 1 of 1                                          Analytical report  AR-12-QA-037932-02



 eurofins



Person in charge
Client Support



Reporting Date  11/12/2012

# REPORT OF ANALYSIS

This analytical report supersedes AR-12-QA-037933-01

AR-12-QA-037933-02

## Sample Code    468-2012-1102B163

Sample Description   CHEESE
Client Sample Code   11JAN13 14:37 K
Sample Reference   HORIZON ORGANICS COLBY CHEESE STICKS

Reception Date   11/02/2012
Reception Temperature   11 (Celsius)
Sample Condition   Acceptable
Purchase Order

### Test Results

**Result**

QA887 - Pesticides OC/PCB (S-19 GC-MS)
Completion Date: 11/12/2012   Method: ASU L00.00-34
Screened pesticides

Not Detected

QA888 - Pesticides OP/ON (S-19)
Completion Date: 11/12/2012   Method: ASU L00.00-34
Screened pesticides

Not Detected

Respectfully Submitted,
Eurofins 

Results shown in this report relate solely to the item
submitted for analysis.
Uncertainty can be obtained upon request.

President

A2LA ISO 17025:2005
NQA ISO 9001: 2008
Food and Drug Administration

American Oil Chemists Society
Grain and Feed Trade Association
Federation of Oils, Seed, and Fats Associations, Ltd

Japanese Ministry of Health and Welfare
Association of Official Analytical Chemists
United States Department of Agriculture

All work done in accordance with Eurofins General Terms and Conditions of Sale (USA), see reverse or www.eurofinsus.com/Terms_and_Conditions.pdf

Analytical report  AR-12-QA-037933-02

53







Person in charge
Client Support



Reporting Date  11/12/2012

## REPORT OF ANALYSIS

This analytical report supersedes AR-12-QA-037931-01



AR-12-QA-037931-02

**Sample Code**    468-2012-1102B160

| | | |
|---|---|---|
| Sample Description | MILK, LIQUID | Reception Date 11/02/2012 |
| Client Sample Code | 12/07/12 02:04 | Reception Temperature 11 (Celsius) |
| Sample Reference | HORIZON ORGANICS WHOLE MILK | Sample Condition Acceptable |
| | | Purchase Order |

### Test Results

**Result**

QA10F - Drug Residues Multiclass 27 in Milk (LC-MSMS)
Completion Date: 11/06/2012    Method: FDA LIB 4443

| | |
|---|---|
| 5-hydroxyflunixin | <2 ng/ml |
| Ampicillin | <10 ng/ml |
| Bacitracin | <250 ng/ml |
| Cefapirin | <10 ng/ml |
| Ceftiofur | <10 ng/ml |
| Chlorotetracycline | <10 ng/ml |
| Ciprofloxacin | <5 ng/ml |
| Cloxacillin | <10 ng/ml |
| Doxycycline | <10 ng/ml |
| Enrofloxacin | <5 ng/ml |
| Erythromycin | <50 ng/ml |
| Oxytetracycline | <10 ng/ml |
| Penicillin G | <5 ng/ml |
| Sarafloxacin | <5 ng/ml |
| Sulfachloropyridazine | <2 ng/ml |
| Sulfadiazine | <2 ng/ml |
| Sulfadimethoxine | <2 ng/ml |
| Sulfamerazine | <2 ng/ml |
| Sulfamethazine | <2 ng/ml |
| Sulfapyridine | <2 ng/ml |
| Sulfaquinoxaline | <2 ng/ml |
| Sulfathiazole | <2 ng/ml |
| Tetracycline | <10 ng/ml |
| Thiabendazole | <10 ng/ml |

A2LA ISO 17025:2005
NQA ISO 9001: 2008
Food and Drug Administration

American Oil Chemists Society
Grain and Feed Trade Association
Federation of Oils, Seed  and Fats Associations, Ltd

Japanese Ministry of Health and Welfare
Association of Official Analytical Chemists
United States Department of Agriculture

All work done in accordance with Eurofins General Terms and Conditions of Sale (USA), see reverse or www.eurofinsus.com/Terms_and_Conditions.pdf
Page 1 of 7
Analytical report: AR-12-QA-037931-02

54

THE HAIN CELESTIAL GROUP, INC. (NASDAQ: HAIN)                www.ghhouse.social.com

 eurofins



Eurofins Sample Code: 468-2012-1102B160

Client Sample Code: 12/07/12 02:04

AR-12-QA-037931-02

## REPORT OF ANALYSIS
This analytical report supersedes AR-12-QA-037931-01

| Test Results | Result |
|---|---|
| Tilmicosin | <10 ng/ml |
| Tylosin | <10 ng/ml |
| Virginiamycin | <5 ng/ml |

**QA887 - Pesticides OC/PCB (S-19 GC-MS)**
Completion Date: 11/12/2012   Method: ASU L00.00-34
  Screened pesticides                                     Not Detected

**QA888 - Pesticides OP/ON (S-19)**
Completion Date: 11/12/2012   Method: ASU L00.00-34
  Screened pesticides                                     Not Detected

Respectfully Submitted,
Eurofins ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Results shown in this report relate solely to the item
submitted for analysis.
Uncertainty can be obtained upon request

▮▮▮▮▮▮▮▮▮▮▮▮▮▮ President

A2LA ISO 17025:2005                    American Oil Chemists Society              Japanese Ministry of Health and Welfare
NGA ISO 9001:2008                      Grain and Feed Trade Association           Association of Official Analytical Chemists
Food and Drug Administration    Federation of Oils, Seed, and Fats Associations, Ltd    United States Department of Agriculture
All work done in accordance with Eurofins General Terms and Conditions of Sale (USA); see reverse of www.eurofinsus.com/Terms_and_Conditions.pdf

55







Person in charge
Client Support



Reporting Date  11/08/2012

## REPORT OF ANALYSIS

This analytical report supersedes AR-12-QA-037490-01

### Sample Code    468-2012-1102B161

AR-12-QA-037490-02

| | |
|---|---|
| Sample Description  SOY MILK | Reception Date  11/02/2012 |
| Client Sample Code  111612 22:02 | Reception Temperature  11 (Celsius) |
| Sample Reference  WHITEWAVE - "SILK ORGANIC ORIGINAL" | Sample Condition  Acceptable |
| | Purchase Order |

### Test Results

Result

**GU081 - CaMV 35S Promoter TaqMan Real-Time PCR**
Completion Date: 11/07/2012    Method:

| | |
|---|---|
| 35S DNA relative to total soy DNA | <0.1 % |
| Quantification Limit | 0.100 % |
| Standard deviation | NA % |

**GU121 - Quantitative PCR Roundup Ready 2 Yield**
Completion Date: 11/07/2012    Method:

| | |
|---|---|
| Quantification Limit | 0.10 |
| Quantitative PCR Roundup Ready 2 Yield | <0.1 % |
| Standard deviation | NA |

Respectfully Submitted,
Eurofins 


President

Results shown in this report relate solely to the item
submitted for analysis
Uncertainty can be obtained upon request.

A2LA ISO 17025:2005
NQA ISO 9001: 2008
Food and Drug Administration
All work done in accordance with Eurofins General Terms and Conditions of Sale (USA); see reverse or www.eurofinsus.com/Terms_and_Conditions.pdf

American Oil Chemists Society
Grain and Feed Trade Association
Federation of Oils, Seed, and Fats Associations, Ltd

Japanese Ministry of Health and Welfare
Association of Official Analytical Chemists
United States Department of Agriculture

Page 1 of 1

Analytical report: AR-12-QA-037490-02

56

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____ Philip S. Gutierrez _____ and the assigned Magistrate Judge is _____ Michael R. Wilner _____ .

The case number on all documents filed with the Court should read as follows:

## 2:13-CV-9314-PSG (MRWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

December 18, 2013
_____
Date

By  MDAVIS
_____
Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

[x] **Western Division**
312 N. Spring Street, G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Ste 1053
Santa Ana, CA 92701

[ ] **Eastern Division**
3470 Twelfth Street, Room 134
Riverside, CA 92501

**Failure to file at the proper location will result in your documents being returned to you.**

---

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | |
|---|---|
| RICHARD B. LEVIN, on behalf of himself and all other persons similarly situated, | ) ) ) ) |
| _Plaintiff(s)_ | ) ) |
| v. | ) Civil Action No. **CV13-09314-PSG** — (MRWx) |
| THE HAIN CELESTIAL GROUP, INC., | ) ) ) |
| _Defendant(s)_ | ) ) ) ) |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_

       THE HAIN CELESTIAL GROUP, INC.
       c/o CSC-LAWYERS INCORPORATING SERVICE
       2710 GATEWAY OAKS DRIVE, SUITE150N
       SACRAMENTO, CA 95833

      A lawsuit has been filed against you.

      Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Rosemary M. Rivas
                          Finkelstein Thompson LLP
                          505 Montgomery Street, Suite 300
                          San Francsico, CA 94111

      If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

                                _CLERK OF COURT_

Date:   DEC 1 8 2013                         MARILYN DAVIS
                                          _Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

UNITED STATE.. .ISTRICT COURT, CENTRAL DISTRICT OF CALI ..NIA

**CIVIL COVER SHEET**

| (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| CHARD B. LEVIN, on behalf of himself and all other persons similarly situated, | THE HAIN CELESTIAL GROUP, INC., |

| ) County of Residence of First Listed Plaintiff   Ventura County<br>(CEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant   Nassau County<br>(IN U.S. PLAINTIFF CASES ONLY) |
|---|---|
| ) Attorneys (Firm Name, Address and Telephone Number) If you are presenting yourself, provide the same information.<br><br>osemary M. Rivas; Finkelstein Thompson LLP,<br>)5 Montgomery Street, Suite 300, San Francisco, CA 94111<br>elephone: (415) 398-8700 | Attorneys (Firm Name, Address and Telephone Number) If you are representing yourself, provide the same information. |

**BASIS OF JURISDICTION** (Place an X in one box only.)

☐ ] 1. U.S. Government Plaintiff

☐ ] 2. U.S. Government Defendant

☐ 3. Federal Question (U.S. Government Not a Party)

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**. ORIGIN** (Place an X in one box only.)

☐ ] 1. Original Proceeding   ☐ 2. Removed from State Court   ☐ 3. Remanded from Appellate Court   ☐ 4. Reinstated or Reopened   ☐ 5. Transferred from Another District (Specify)   ☐ 6. Multi-District Litigation

**REQUESTED IN COMPLAINT: JURY DEMAND:**   ☒ Yes   ☐ No   (Check "Yes" only if demanded in complaint.)

**LASS ACTION under F.R.Cv.P. 23:** ☒ Yes ☐ No      ☒ **MONEY DEMANDED IN COMPLAINT:** $ TBD

**. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
efendant falsely advertised its products as "100% Natural" in violations of consumer protection laws and common law.  See also 28 U.S.C § 1332 (d).

**I. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 410 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influ-enced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Com-modities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures ct/Review of Appeal of gency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 50 Constitutionality of tate Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

OFFICE USE ONLY:           Case Number:   **CV13-09314**

[11/13)                              CIVIL COVER SHEET                              Page 1 of 3

UNITED STATE   STRICT COURT, CENTRAL DISTRICT OF CALII   .NIA
CIVIL COVER SHEET

**II. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes  ☒ No | ☐ Los Angeles | Western |
| If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B: Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | A PLAINTIFF? Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT? Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| ☐ Yes  ☒ No | ☐ Los Angeles | ☐ Los Angeles | Western |
| If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |
| Indicate the location in which a majority of claims arose: | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |

C.1. Is either of the following true? If so, check the one that applies:
☐ 2 or more answers in Column C
☐ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the SOUTHERN DIVISION. Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right. ➡

C.2. Is either of the following true? If so, check the one that applies:
☐ 2 or more answers in Column D
☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the EASTERN DIVISION. Enter "Eastern" in response to Question D, below.

If none applies, go to the box below. ⬇

Your case will initially be assigned to the WESTERN DIVISION. Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | Western Division |

UNITED STATE DISTRICT COURT, CENTRAL DISTRICT OF CALI. NIA
CIVIL COVER SHEET

(a). **IDENTICAL CASES:** Has this action been previously filed **in this court** and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

(b). **RELATED CASES:** Have any cases been previously filed **in this court** that are related to the present case?   ☐ NO   ☒ YES

If yes, list case number(s):   Case No. SACV13-1757-AG (AN); Case No. CV13-8559-SJO (JEM)

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☒ A. Arise from the same or closely related transactions, happenings, or events; or

☒ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☒ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**SIGNATURE OF ATTORNEY**
**OR SELF-REPRESENTED LITIGANT):**   *Rosey M. Linn*   DATE:   12/18/2013

tice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or her papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed it is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

y to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |